# Richmond

## THELMA CHRISTINE WILSON v. EDWIN L. WILSON.

May 3, 1954.

Record No. 4216.

Present, Hudgins, C.J., and Eggleston, Spratley, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Percy Carmel* and *Arthur W. Woltz*, for the appellant.

*Peter O. Miller*, *William H. King* and *McGuire, Eggleston, Bocock & Woods*, for the appellee.

WHITTLE, J., delivered the opinion of the court.

This appeal was granted to review two decrees entered in the Circuit Court of the City of Warwick, on March 9, and April 27, 1953, in a suit there pending involving the domestic difficulties of Edwin L. Wilson and his wife, Thelma Christine Wilson.

The litigation was begun before the late Honorable Frank Armistead, judge of the court. After his death and pending the appointment of his successor, Honorable Frank A. Kearney presided and entered certain decrees in the proceeding. Honorable C. H. Shield, Jr., who was appointed to succeed Judge Armistead, disqualified himself and Honorable Richard B. Spindle was designated to preside, the decrees here complained of having been entered by him.

On June 13, 1951, Edwin L. Wilson, hereinafter referred to as the husband, filed a bill for divorce against his wife, Thelma Christine Wilson, herein referred to as the wife, charging cruelty and willful desertion, and praying for a divorce *a mensa* on these grounds. The wife filed her answer denying the charges, the answer containing a cross-bill in

which she asked for separate maintenance for herself and support for the three minor children of the marriage. The cross-bill also prayed that the wife be awarded the custody of the children and that the husband be enjoined from disposing of his property. She did not seek a divorce.

When the evidence offered by the husband in support of his bill for divorce was concluded, counsel for the wife moved that it be stricken for the reason that it was insufficient to justify a divorce in favor of the husband. This motion was sustained by a decree entered on June 19, 1952. The decree also dismissed the husband's bill for divorce and ordered the cause continued for hearing on the wife's cross-bill.

On June 20, 1952, a decree was entered awarding the wife temporary alimony in the sum of $250 per month. The further sum of $200 per month was allowed for the support of the minor children. The decree also directed that the husband pay his wife $1800, representing support money for the months of March, April and June, 1952, as agreed upon at the suggestion of counsel. By decree entered on August 5, 1952, it was ordered that the husband's realty be subject to a lien for the required payments of alimony and support money.

On September 22, 1952, the husband was ordered to appear before the court to show cause, if any he could, why he should not be punished for contempt of court for having failed to comply with the decree of June 20, 1952. On October 7th the court held: "* * * and it further appearing from the evidence that the complainant, E. L. Wilson, has made no effort to comply with the decree of this court and by his acts and actions has attempted to avoid and evade said decree, which constitutes a deliberate and studied contempt of this court * * * and * * * that (he) having wilfully disobeyed said decree * * * is committed to the City Sergeant of this City to be held in jail for a period of six (6) months for said contempt." The imposition of the foregoing sentence was suspended until November 8, 1952, on which date, the husband

having made all payments required of him, the jail sentence was revoked.

On February 12, 1953, the husband filed a petition requesting the court to compel his wife to proceed with the prosecution of her claim under the cross-bill. On March 9th the court entered a decree requiring the wife to proceed with her suit and to conclude the same not later than March 30, 1953. By this decree, Arthur F. Eisenman, Jr., was appointed special commissioner with directions that he execute in the name of Mrs. Wilson deeds conveying her dower interest in seven lots with the improvements thereon, belonging to the husband, and described in the decree. The decree ordered that Mrs. Wilson's dower interest in the said property be commuted and the sum representing the commuted dower be deposited with the clerk pending further order of the court.

The decree of March 9th also revoked and annulled so much of the decree of August 5, 1952 as created a lien on the husband's realty to secure the payments of alimony to the wife and support money to the children. The lien so created was specifically removed from the property directed to be sold by the special commissioner. Further, this decree suspended the temporary alimony payments to the wife for the months of January, February and March, 1953, reserving for decision the propriety of requiring said payments to be made until the entry of the final decree. To all of the foregoing Mrs. Wilson, by counsel, excepted.

On April 2, 1953, the special commissioner filed his report which disclosed the sale of the seven houses and lots by E. L. Wilson to E. L. Wilson, Incorporated, for the price of $50,000. He reported that he had, as ordered, affixed the signature of Thelma Christine Wilson to the deed consummating the sale. He further reported that he had computed and deposited with the clerk a sum representing Mrs. Wilson's contingent dower interest in the property.

Evidence presented on behalf of the wife relating to alimony, support money for the children and their custody,

was heard *ore tenus* on March 30, 1953, and it was transcribed and filed in the cause.

The final decree entered on April 27, 1953, adjudicated the questions raised, in numbered paragraphs, which may briefly be summarized as follows:

(1) The wife was granted separate maintenance.

(2) The wife's request that she and the children be permitted to remain in the home known as No. 6 Westover Road was denied, to which ruling she excepted.

(3) The husband was required to pay the following: (a) For the support and maintenance of Mrs. Wilson, $250 per month; (b) for the support of the three infant children, $200 monthly; (c) for lodging for the wife and children, $125 per month, which sum was not to be paid so long as the wife and children continued to occupy the home. To all this Mrs. Wilson excepted on the ground that the amounts were inadequate.

(4) The husband was required to pay, without interest, the sums for temporary alimony withheld from Mrs. Wilson under the decree of March 9, 1953.

(5) The custody of the three children was awarded to the mother with the right granted the father to visit them and have their custody at specified times.

(6) The court held: "Pursuant to the authority conferred on the court by § 20-107 of Michie's Code of Virginia now in effect, it is adjudged, ordered and decreed that from and after the date of the entry of this order, the complainant, Edwin L. Wilson, shall own and hold title to all of his real estate as though unmarried and the defendant's contingent right of dower therein is extinguished." It was further held that the husband was entitled to receive the fund deposited with the clerk representing the commuted inchoate dower of the wife in the seven houses and lots which had been sold; and the action of the special commissioner in affixing Mrs. Wilson's signature to the deed and the sale thus made was ratified and approved, to all of which Mrs. Wilson, by counsel, excepted.

(7) The home known as No. 6 Westover Road was impressed with a lien for the payment of the alimony and support money decreed but the court specifically decreed that this was the only property of the husband affected by the lien, which should "not encumber any other real estate now or hereafter owned by the said E. L. Wilson". To this portion of the decree the wife excepted.

(8) An allowance of $750 was fixed for Mrs. Wilson's attorney.

(9) The cause was retained on the docket for further proceedings.

(10) The concluding paragraph ordered the clerk forthwith to comply with "paragraph (6) hereof" which required him to deliver to the husband or his attorney the funds held as the wife's commuted dower interest in the seven houses.

While the assignments of error are six in number, as we view the case they present generally four questions for decision:

1. May a court of equity properly decree in a proceeding of this character that specific property be set apart for the sole use of the wife and minor children?

2. Was the allowance for support and maintenance sufficient under the evidence?

3. Does § 20-107 of the Code of Virginia grant to a court of equity, in a proceeding of this nature, the right to extinguish an inchoate dower interest?

4. Did the lower court abuse its discretion in decreeing that a lien to secure the payments to the wife and children be limited to No. 6 Westover Road?

The record discloses that the Wilsons were married on June 4, 1925, and had lived in the immediate vicinity of their present home during their married life. Prior to the institution of the divorce suit the parties lived at No. 6 Westover Road in the city of Warwick, in a home which had been constructed many years ago by the husband at a cost of approximately $10,000, its estimated present value being $25,000.

Five children were born of this union and two of them are now of age. The three minor children, Bennett, aged 18; Douglas, aged 13; and Parks, aged 5, live with their mother.

When the Wilsons were first married the husband worked in the shipyards at a wage of $28 a week. Soon thereafter he accepted employment with a building firm and speedily progressed. In a short time he was made vice president of the firm, receiving a salary of $10,000 per year. Later he went into a similar business for himself and continued to prosper. His wife acted as an officer in several corporations organized by him and at various times he divided profits with her. At the time of the divorce proceeding the record disclosed that the wife had approximately $30,000 which she had thus acquired. The record further shows that up until a few years prior to the separation the Wilsons were happily married, both being respected in the community. The husband amply provided for his family, maintaining three Cadillac automobiles, one of which was set aside for the use of the wife; the house was comfortably furnished, and they lived generally as a family of affluence.

The husband began drinking to excess and, as frequently follows, the family relations began to deteriorate. The deterioration speedily progressed, the husband inflicting upon the wife many indignities which need not here be related. Intimations were made by counsel, not by Mrs. Wilson, that there was "another woman" involved. The evidence discloses that the unfortunate situation surrounding this formerly happy family is bad enough without further exploring the reasons for the trouble. Suffice it to say that the trial court was amply justified in denying the husband the divorce he sought and in granting the wife's request for separate maintenance.

 The court, as pointed out above, decreed that the husband be required to furnish the wife and the minor children a suitable place in which to live, and a rental allowance of $125 per month was adjudged to be a reasonable sum for

this purpose. The first question deals with its refusal to decree instead that the wife and children have the use of the home known as No. 6 Westover Road. There are many appealing reasons which would dictate that they be allowed to remain there. It was this home which the husband deserted; he abandoned it and his family, and he has been adjudged the one responsible for existing conditions. Two of the minor children were born and have lived in the home all their lives.

Furthermore, the husband does not desire to live in the home, as evidenced by the fact that he contracted to lease it to other parties rather than permit his family to live there, thus endeavoring to heap further humiliation and suffering upon them. He will gain no financial advantage by denying his family the use of the home. His only compensation will be his imaginary satisfaction in seeing his family suffer further indignities. Thus one reason for the rule that specific property cannot be assigned to the wife as alimony does not exist in this case. In *Lovegrove* v. *Lovegrove*, 128 Va. 449, 104 S. E. 804, we said: "The chief complaint is that the court directed the wife to surrender the dwelling house, and this is a great hardship; but it cannot be avoided except by creating another, that is, the exclusion of the husband from his own home." But here the husband is not being excluded from his own home. He does not care to occupy it and has leased it to outsiders.

However, the rule has long been established in our jurisdiction that specific property should not be allotted to the wife as alimony in a divorce proceeding, since alimony is merely a personal judgment in favor of the wife against the husband. *Watson* v. *Mose*, 165 Va. 661, 666, 183 S. E. 428; *Gum* v. *Gum*, 122 Va. 32, 94 S. E. 177; *Almond* v. *Almond*, 4 Rand. (25 Va.) 662, 668, *Bray* v. *Landergren*, 161 Va. 699, 172 S. E. 252.

The weight of authority seems to be that this principle also applies to a suit for separate maintenance, with which we are here concerned. 27 Am. Jur., Husband and Wife,

§ 426, page 32; 42 C. J. S., Husband and Wife, § 625, pp. 263, 264. (*Contra*: *Wright* v. *Wright*, 216 N. C. 693, 6 S. E. (2d) 555.) We therefore agree that the lower court correctly refused to designate the specific property for the use of the wife and children.

However, we are not satisfied with the allowance awarded the wife as rent money for a suitable, substitute home, which the husband, under the law, is required to furnish. If the husband persists in leasing the home to outsiders to the exclusion of his family, he should be required to provide them with a comparable home.

Therefore the decree in this regard should be amended to give the wife sixty days from the date of amendment in which to select a home in keeping with the one in which she and her minor children now live, her selection to be reported to the court for its determination as to its fairness, the terms of the lease, etc. The decree should further require the husband to pay the necessary moving expenses as well as the rent on the home so selected whether the amount be more or less than the rental allowance in the decree of April 27, 1953.

The second question deals with the sufficiency of the allowances made to the wife and minor children for their support and maintenance. As stated, the court decreed that the wife be paid the sum of $250 per month, and that the sum of $200 per month be paid for the support and maintenance of the three minor children. The wife's contention is that such sums are insufficient and that the husband's income is such as will admit of their needs being cared for. The husband, on the other hand, contends that the allowances are fair and as there is nothing to indicate any abuse of discretion the ruling of the court should not be disturbed. *Lovegrove* v. *Lovegrove, supra.*

The record discloses that this family lived in comfort, if not in luxury, prior to its disruption, since which time there has been a calculated effort on the part of the husband to minimize his income. It shows that he deliberately with-

drew valuable property from the rental market in order to defeat the payments to his wife. Throughout his evidence he was evasive both as to his income and net worth. There is no adequate appraisal of the husband's net worth in the record, and while, of necessity, a man engaged in the builders trade cannot foretell his annual income with mathematical certainty, he can show with some degree of accuracy his income from investments such as rents, stocks and bonds, and his salary, if there be such. No such showing has been made. The amount of the allowances in cases of this kind is too important to be based upon incomplete information.

As indicated, this case must be remanded for further consideration. At that time the court should appoint a certified public accountant for the purpose of ascertaining the net worth of the husband. A complete inventory and competent appraisal should be made of all his assets. This should include an itemized report of his real estate, his intangible property and personalty, along with his interest in and the assets of E. L. Wilson, Incorporated, as well as any other company in which he has a controlling interest if there be such. The income of the husband over a period of years should be audited and submitted to the court. The accountant so selected should be empowered and required to furnish the court with any and all information pertaining to the worth of the husband and his income. In the light of the information so furnished by the written reports of the accountant, and after opportunity is given counsel on both sides to examine the reports and the accountant, the court should reconsider the allowances in the decree of April 27, 1953, and ascertain if the evidence so adduced justifies an increase thereof and decree accordingly.

The third question presented is: Does section 20-107, Virginia Code, 1950, empower a court of equity to extinguish the contingent right of dower in a case such as is here being considered? The decree of April 27, 1953, adjudged that from its entry "Edwin L. Wilson shall own and hold title to all of his real estate as though unmarried and

the defendant's contingent right of dower therein is extinguished". Code, § 20-107, under which such authority is allegedly derived, reads:

"* * * Upon decreeing the dissolution of a marriage, and also *upon decreeing a divorce*, whether from the bond of matrimony or from bed and board, and *upon decreeing that neither party is entitled to a divorce* the court may make such further decree as it shall deem expedient concerning the estate and the maintenance of the parties, or either of them, and the care, custody and maintenance of their minor children, and may determine with which of the parents the children or any of them shall remain." (Italics supplied)

It cannot be doubted that an inchoate or contingent right of dower is a valid right or interest. See 28 C. J. S., Dower, § 42, p. 108. It is a right given or created by law, the effect of the relation created by marriage. It emanates from and is solely dependent upon the beneficial ownership of the husband. Dower is consummated and raised to the dignity of an estate in land (after it is assigned) upon the death of the husband. While coverture continues the wife's right of dower is merely inchoate; it is a contingent possibility and not a vested right. Minor on Real Property (Ribble), 2nd Ed., Vol. 1, § 282, p. 359; *Corr v. Porter*, 33 Gratt. (74 Va.) 278; *Turner v. Turner*, 185 Va. 505, 510, 39 S. E. (2d) 299. Such a contingent right of dower may be abridged or taken away by statute before the husband's death. Until then it is subject to the will of the legislature. After the husband's death, if the other essentials are present, dower becomes a vested right. 16 C. J. S., Constitutional Law, § 227(b), p. 654; *Turner v. Turner, supra*, (185 Va. at p. 511).

The legislature exercised its will over the contingent right of dower when it enacted § 8-695, Virginia Code, 1950, by this section modifying it to the extent that if the lands of joint tenants are sold in lieu of partition in kind, the wife's inchoate dower in her husband's interest is wiped out. Minor on Real Property, 2nd Ed., Vol. 1, § 258, p. 327. Section 20-111 of the Code provides that by a decree of divorce

from the bond of matrimony contingent property rights are abolished. However, while this contingent right is subject to legislative control, it cannot, being an institution of positive law, be barred or defeated so long as coverture exists, except in some mode plainly pointed out by statute.

It will be remembered that the instant case started as a divorce suit brought by the husband against the wife. The evidence taken on the allegations in the bill was stricken as being insufficient to grant the relief prayed for and the bill was dismissed. The case before us deals with the cross-bill filed by the wife. She did not seek a divorce. She prayed for support and maintenance for herself and minor children, and for their custody. She is here seeking only such rights as she has under the broad provisions of the common law independent of statute. *White* v. *White*, 181 Va. 162, 168, 24 S. E. (2d) 448; *Heflin* v. *Heflin*, 177 Va. 385, 394, 14 S. E. (2d) 317; 27 Am. Jur., Husband and Wife, § 402, pp. 9, 10, 11.

The statute, § 20-107, contains these words: "* * * upon decreeing a divorce * * * and upon decreeing that neither party is entitled to a divorce the court may make such further decree * * *", etc. In this instance the court has never decreed "a divorce", nor has it decreed that "neither party is entitled to a divorce". It has only decreed that the complaining husband was not entitled to the divorce which he prayed for. As stated, the wife has sought no divorce, and her right to a divorce has never been adjudicated. But as we view the instant case it is not necessary for us to decide whether or not section 20-107 is broad enough to empower a court of equity to extinguish the wife's contingent right of dower in circumstances such as are here presented. However, we do decide that if such power exists by reason of the section, it should not have been exercised in this instance. To hold otherwise would place the wife in an intolerable position.

Since the entry of the decree denying him a divorce the husband has ruthlessly attempted to embarrass his wife. The

car which he had set aside for her use was hauled away under his direction and sold. He withheld contributions to the family, leaving them more or less destitute. He entered into a lease for the home in which his family lived, attempting thus to leave them without shelter. His attitude toward his family is further disclosed by his attempts to disfurnish them by claiming in his depositions all manner of household furnishings and trinkets ranging from a grandfather's clock to a small coffee pot, thus quibbling over trivialities in the face of and pending the attempted solution of this domestic tragedy brought about by his own misconduct.

Throughout the proceeding a calculated attempt was made by the husband to show that his wife had acted arbitrarily and unreasonably in refusing to sign deeds and deeds of trust to real estate standing in the name of the husband. He attempted to show that such refusal to sign these deeds had placed him in a position where he could not successfully carry on his trade as a builder and developer. We may assume that Mrs. Wilson's refusal to sign the deeds did curtail the husband's efforts, but she is not to blame for the predicament in which he found himself. The husband, and not the wife, has been adjudged to be the party responsible for the situation. It was he who threatened "that if there was any way he could lose money he would do it rather than let me (his wife) have five cents of anything that he had." In furtherance of this threat the record discloses that he withdrew from the rental market a number of dwelling houses which were yielding a rental in excess of $1,000 a month, on the pretext that if the Rent Control Act was later abolished he could get a greater return from the houses.

It is further disclosed that when the court ordered the special commissioner to sign Mrs. Wilson's name to the deed to the seven houses which were sold on the husband's petition, the title was transferred to his *alter ego*, E. L. Wilson, Incorporated, for $50,000. These houses had previously been valued at $81,000. This transaction will be considered

later. In view of such conduct on the part of the husband it can hardly be said that the wife was acting unreasonably in refusing to sign deeds. She evidently realized that if and when she signed deeds conveying property, both the property and the consideration received therefor would pass forever beyond her reach. The record shows that she, through no fault of her own, has been forced to seek the aid of a court of equity in order to require her husband to perform the legal duty which is his, the support of his wife and minor children. Under the decree appealed from, she is required to accept the alimony allotment therein made, which would terminate upon the death of the husband. *Foster* v. *Foster*, 195 Va. 102, 77 S. E. (2d) 471. Under this decree she is required to relinquish her contingent right of dower in the husband's presently valuable real estate, and in our view, a court of equity should not exact such a penalty of one praying at its bar.

Alimony is uncertain in duration, lasting possibly a day, a month or a year or more. It ceases upon the death of the husband. *Eaton* v. *Davis*, 176 Va. 330, 340, 10 S. E. (2d) 893. On the other hand, the wife's contingent dower right in her husband's estate may prove valuable and long lasting. If she survives the husband her contingent interest ripens into an estate in his lands. Such considerations may have prompted Mrs. Wilson not to seek a divorce in this proceeding. That portion of the decree of April 27, 1953, extinguishing her dower rights in the lands of her husband is therefore annulled.

We now consider the effect of the trial court's decree in which it ordered the special commissioner to sign Mrs. Wilson's name to the deed conveying the real estate, which sale was ordered by the decree entered on March 9th and approved in the decree of April 27, 1953. Admittedly, these houses and lots were not sold on the open market. They were sold to E. L. Wilson, Incorporated, by E. L. Wilson, the complainant, and his wife's name was signed by the special commissioner as required by the court.

The husband had estimated this property to be worth $81,000, and his corporation bought it for $50,000. It may be true as alleged in the husband's petition that he was in dire circumstances regarding these lots, brought about by Mrs. Wilson's refusal to sign away her dower rights in them. But as indicated above, her refusal was not unreasonable, and the situation in which he found himself was of his own making. Under these circumstances a court of equity should not have furnished aid to the recalcitrant husband to the serious detriment of his wife who was without fault.

We are therefore of the opinion that the situation as it existed prior to the entry of the decree of March 9, 1953, should be re-established as nearly as possible. If E. L. Wilson, Incorporated, has not disposed of all of the lots, such remaining lots should be reconveyed to E. L. Wilson individually. Any of the houses sold by the corporation in good faith should be reported to the trial court by the accountant, with the names of the purchasers thereof and the consideration paid therefor. The title to any such house should not be disturbed. However, the decree should require the husband to deposit with the clerk of the court a sum sufficient to fully protect the wife in the commuted value of her dower interest in any of the houses sold, such interest to be figured on the net price received by the corporation for the property.

The final question presented deals with the trial court's limiting the property on which the lien for alimony and maintenance should attach. Section 8-388, Virginia Code, 1950, authorizes the court to designate such property. In this instance the court, acting under the authority of this section, designated the home place, valued at $25,000. This portion of the decree is under the control of the court and if it later becomes necessary the security can be increased. It is hardly probable that the husband will violate the court's order a second time. There is no merit in the wife's contention that the trial court erred in this respect.

The husband shall pay a fee of $600.00 to the attorneys for Mrs. Wilson for their services in prosecuting this appeal.

For the reasons stated, the decrees appealed from, entered on March 9 and April 27, 1953, should be revised in accordance with the views herein expressed, and the case is remanded for this purpose, and for further proceedings as herein indicated.

*Affirmed in part; reversed in part, and remanded.*

EGGLESTON and SPRATLEY, JJ., concur in result.

SPRATLEY, J., concurring in result:

I am in accord with the views expressed by the majority in all respects, save in the failure to decide whether or not sec. 20-107, Code of Virginia, 1950, is broad enough to empower a court of equity to extinguish the wife's contingent right of dower under the circumstances of this case.

As I see it, the proceeding under review is merely a suit by the wife for maintenance and support. The questions before us do not involve the right of either party to a divorce. The husband's suit for divorce terminated when his bill was dismissed and he did not appeal. The trial court did not decree a dissolution of the marriage, grant a divorce, or adjudge that neither party was entitled to a divorce. The only cause pending before the trial court and before this court, after the dismissal of the husband's bill, is that instituted by the wife in her cross-bill for maintenance and support. It is a separate and independent proceeding to enable her to obtain the benefits of the marital relation, a relation which still exists with all of its attributes. That the wife had the right to institute such a proceeding is generally recognized. *Bray* v. *Landergren,* 161 Va. 699, 706, 172 S. E. 252; 27 Am. Jur., Husband and Wife,

§ 402, page 9; 42 C. J. S., Husband and Wife, § 611, page 202.

The clause "and upon decreeing that neither party is entitled to a divorce" was added to § 5111, Code of Virginia, 1919, by Acts of Assembly, 1934, page 515. Prior to the amendment, Judge Crump, in construing § 5111, Code of 1919, on pages 594, 595, *McCotter* v. *Carle*, 149 Va. 584, 140 S. E. 670, had this to say:

"This language bestowing the power to consider the estate of the parties in a divorce suit is unmistakable in its effect and purpose. And it follows as a necessary corollary from what has already been held in this opinion that the authority to deal with the property rights of the husband and wife or either of them is limited to the decreeing of a divorce, and is denied to the court when the application for the divorce is altogether refused. However broad an interpretation may be placed upon the 'estate of the parties,' it is clear that, when a divorce is *not decreed*, the power of the court to consider in any respect the estates or property rights of the parties, whether between themselves or otherwise, is non-existent.

"It is generally held that, under the enabling statutes, the courts in the absence of the grant of express power have no authority to decree upon the estate or property of the parties, when the divorce is refused." Citing cases.

The amendment of 1934 extended the power of the court to deal with the property of the parties when it decreed that neither party was entitled to a divorce. Thus, in a divorce proceeding after the amendment, the authority given in § 20-107 to deal with the property rights of the husband and wife, or either of them, is specifically limited, in unmistakable language, to a case wherein the court either decrees the dissolution of a marriage, decrees a divorce, or decrees that neither party is entitled to a divorce. When those conditions are not met, the section confers no power on the court to consider in any respect the property rights

of the parties. The power is restricted and confined within the limitations prescribed.

In this case, the marital relation still exists, and the wife is entitled to the statutory right of dower given her under § 64-27, Code of Virginia, 1950. That right should not be modified or extinguished by implication.

For the reasons stated, I am, therefore, of opinion that regardless of whether we consider this proceeding as a separate action for maintenance and support, or as a suit for divorce, § 20-107 is not applicable.

EGGLESTON, J., joins in this opinion.