# Richmond

## EUNICE GRAY SMITH v. AZOR WADE SMITH.

June 16, 1958.

Record No. 4771.

Present, All the Justices.

The opinion states the case.

A. *Jeffery Bivins* (*Bivins, Jacobs & Bivins*, on brief), for the appellant.

W. *Hale Thompson*, for the appellee.

SPRATLEY, J., delivered the opinion of the court.

This suit was brought by appellee, Azor Wade Smith, against his wife, Eunice Gray Smith, appellant, to obtain a divorce from the bond of matrimony on the grounds of adultery. In his bill of complaint, appellee prayed for the custody of their child, and that all property, real, personal and mixed, jointly owned with appellant, be divided equally between them. Appellant, in her answer and cross-bill, prayed for a divorce from bed and board on the grounds of desertion; custody of and support for the child; and that the property rights of the parties be settled in the suit.

The court by decree entered July 11, 1956, granted appellee a divorce *a vinculo matrimonii*. Custody of and support money for the child, then five years of age, were awarded appellant. In the same decree, ownership of a 1955 Pontiac automobile, titled in the name of appellant and appellee jointly, was awarded appellee. The appellee was ordered to pay the balance due on the automobile, and it was provided that any interest appellant might have in the car would be determined upon a final settlement of their property rights. The decree further directed one of the commissioners of the court to take and state an account of the property, real and personal, jointly owned by the parties, and to report his findings of fact, together with his recommendation for partition and distribution.

The evidence taken before the commissioner showed that the real property, the major portion of the household furniture and appliances, and the several automobiles owned by the parties had been purchased in their joint names. Appellee testified, without contradiction, that the purchase price of all of the property owned by them was paid out of their joint funds, to which each agreed to contribute according to their respective means. This fund, composed of the salaries and earnings of each of the parties, was deposited in a checking account in appellant's name.

In addition to contributing towards their normal living expenses,

appellee contributed $100 and appellant $500 toward the purchase price of the first automobile they acquired after their marriage. The deferred purchase payments on this car and those subsequently acquired were paid from their joint earnings, culminating in the ownership of the 1955 Pontiac car. This car had a retail value of $2,370 as of July 31, 1956, and the balance then due on it was $1,350.

The commissioner found that appellant had earned and owned more monies than the appellee during coverture, that she had inherited $8,100 from her father's estate, of which $7,900 was used as a down payment on the purchase of a dwelling constructed on Lots 15 and 16, Block 18, in the City of Newport News, Virginia, conveyed to them as tenants by the entirety with the right of survivorship; that the $200 balance was used for water connections, etc.; and that appellee had contributed but $100 towards the initial payment. A deed of trust was placed upon the real property on April 27, 1954, for the principal sum of $4,500, which amount had been curtailed by payments from their joint earnings in the amount of $522.70.

The commissioner recommended that appellee be given sole ownership of the Pontiac automobile, and the appellant be required to execute such muniments of title as might be necessary to convey all of her interest therein to appellee. Although the commissioner found that the larger contribution of appellant towards the purchase of the real property did not cause a resulting trust to arise therein in her favor, he recommended that she be allotted the real estate, together with the furnishings, fixtures, appliances, and equipment therein contained. He added that appellee should be required to execute such muniments of title as might be necessary to convey his interest therein to appellant. Each party was to pay off and discharge any and all liens and encumbrances on the respective properties allotted to them.

The appellee excepted to the report on the grounds that the commissioner erred in his findings of fact and conclusions of law.

By decree entered January 14, 1957, the court held that appellant and appellee owned "jointly and equally" the real estate, the household furnishings and effects and the Pontiac automobile. It ordered that since the real and personal property "jointly and equally" owned by the parties was not susceptible to division in kind, it be sold at either private sale or public auction, provided neither of the joint owners was willing to purchase it and pay to the other the value of his or her interest therein. To that end commissioners were ap-

pointed to conduct such sale, and directed to report their actions to the court.

The granting of the divorce to the appellee and the awarding of custody of the child to the appellant, by the decree of July 11, 1956, are not issues in this appeal. The sole assignment of error is: "that the adjudication in the decree of January 14, 1957, that the parties own jointly and equally the real and personal property enumerated therein is contrary to the law and the evidence."

In connection with her assignment, the appellant says the following questions are involved:

"1. Where propery is conveyed to husband and wife as tenants by the entirety with right of survivorship, and the wife pays a greater portion of the purchase price than does the husband, does a resulting trust arise in the absence of evidence of a contrary intention?

"2. Does § 20-107 of the Code of Virginia require that the chancellor take into account the source of a jointly-acquired property when making distribution of the assets of a bankrupt marriage?"

■ The answer to the question whether a resulting trust arose is no.

"A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein and where the inference is not rebutted and the beneficial interest is otherwise effectively disposed of." Vol 2, Restatement of the Law of Trusts, pages 1244, 1245.

In the recent case of *Kellow* v. *Bumgardner*, 196 Va. 247, 83 S. E. 2d 391, we had occasion to state the general principles relating to resulting trusts. There we quoted with approval the following statement from *Irvine* v. *Greever*, 32 Gratt. (73 Va.) 411, 417: " 'The doctrine generally, if not universally recognized is, that when a conveyance of real estate is made to one person, and the consideration paid by another, it is presumed that the party advancing the money intended a benefit to himself, and accordingly a resulting trust is raised in his behalf. But when the conveyance is taken to a wife or child, or to any other person for whom the purchaser is under an obligation to provide, no such presumption attaches.' " 196 Va., *supra*, page 253.

"* * * (I)f there is evidence that the person who provided the money had some intention other than to secure the benefits for

himself, the presumed intention fails and no resulting trust will be recognized." 196 Va., *supra*, page 255.

Again, "It is well settled that he who asserts a resulting trust in real property, which is clearly an effort to controvert a duly executed and recorded deed, must establish it by clear and convincing evidence, or, as stated in *Moorman* v. *Arthur*, 90 Va. 455, 477, 18 S. E. 869, 878, the evidence must be 'clear, cogent, and explicit.' While the burden of proof has been variously stated, it is clear that a mere preponderance of the evidence is not sufficient to establish a resulting trust." (Citing cases.) 196 Va., *supra*, page 256.

The real property involved in this proceeding was held by the parties as tenants by the entirety during their married life. Each was seized with the entire estate, and upon the death of one the survivor takes the whole. Neither could defeat the rights of the other by separate act. Thus a beneficial interest was created in each grantee at the time the property was acquired. The purchase of the automobiles and other personal property in joint names from joint funds also evidence a clear intention to create a beneficial interest in each party.

The cases of *Throckmorton* v. *Throckmorton*, 91 Va. 42, 22 S. E. 162, and *Mumpower* v. *Castle*, 128 Va. 1, 104 S. E. 706, relied on by appellant do not support her contention. The facts in each of those cases are different from those here. In the *Throckmorton* case, there was absence of proof that the wife's estate was used in paying for property conveyed to her husband. In the *Mumpower* case, there was evidence which indicated that the husband had committed a fraud upon his wife in having the real estate conveyed to him. In neither of the cases was there an estate by the entirety, or of joint ownership, involved.

See also *Miller, et al.* v. *Blose's Ex'or, et al.*, 30 Gratt. (71 Va.) 744; *Beecher* v. *Wilson, Burns & Co.*, 84 Va. 813, 6 S. E. 209; 54 Am. Jur., Trusts, sections 203, 204 and 205, pages 158 *et seq.*; 89 C. J. S., Trusts, § 128, page 990.

*Cf. State* v. *Ellison*, 290 Mo. 28, 233 S. W. 1065, and *Hecker* v. *Vanhook*, (Mo. 1922) 246 S. W. 337, not reported officially.

Under the second question, appellant insists that "an equitable view of all the circumstances of the case requires that consideration be given to the source of the property" acquired as tenants by the entirety.

It should be here noted that upon the entry of a divorce decree,

§ 20-111, Code of 1950*, became effective, and that the decree of reference was entered subsequent to the entry of the divorce decree.

Having concluded that there was no resulting trust in the real property, and that the property rights of the parties were determined under Code, § 20-111, the trial court had no authority to arbitrarily order that appellant be allotted a greater share in the property than that fixed by statute, or to direct the transfer of any specific property of the husband to her. Equitable principles do not require the return of a gift voluntarily made by appellant to her husband, who was the natural object of her bounty at the time of her gift. Courts of equity cannot ignore specific statutory provisions and established principles relating to the subject under consideration.

Notwithstanding the fact that appellant joined in the request of appellee that their property rights be settled in this suit, and now argues that the court should have allowed her a larger portion of the property involved, because of her contribution thereto, it has been suggested, in our consideration of the case, that the trial court had no jurisdiction in this proceeding to decree concerning property rights of the parties other than rights created by the marital relation. Jurisdiction was not questioned by appellant either in the trial court, or before us; but it is well settled that it may be raised at any time in the proceeding.

The cases of *Gum* v. *Gum*, 122 Va. 32, 94 S. E. 177, *McCotter* v. *Carle*, 149 Va. 584, 140 S. E. 670, and *Watson* v. *Mose*, 165 Va. 661, 183 S. E. 428, have been cited in support of the view that the trial court was without jurisdiction to adjudicate that the property was jointly and equally owned between appellant and appellee and to order a partition thereof in this suit.

In *Gum* v. *Gum, supra,* Judge Burks, in construing § 2263, Code of 1904, Pollard, (of which §20-107, Code of 1950, is a part) said:

"While contingent right of dower is not technically an estate but is a mere lien or charge which may be released or relinquished, it is still a valuable property right, and we do not doubt that the statute intended to confer upon the court the right not only to settle the status of the parties, but the future rights of each in the property

---

*Section 20-111 provides that upon the entry of a decree of divorce from the bond of matrimony, the "right of survivorship in real or personal property title to which is vested in the parties as joint tenants or as tenants by the entirety, with survivorship as at common law, shall be extinguished, and such estate by the entirety shall thereupon be converted into a tenancy in common."

of the other. Under the provisions of chapter 101, the court has ample power to grant to the wife suit money, maintenance pending litigation, support for children, alimony, and to make other decrees concerning the estates of the parties deemed expedient by the court, and nothing is more common than to charge these sums of money as liens on the property of the husband. Furthermore, the court has the right to make decrees concerning the estate of either party, and in the instant case a decree extinguishing the marital rights of the wife in her husband's property concerns the estate of the husband as well as the contingent rights of the wife, and it would seem clear from the very language of section 2263 that the court had this power." 122 Va., page 38.

In addition, the learned Judge said: "There does not seem to be any doubt that, as to existing property—and the property in this case was in existence at the time of the decree for the divorce—the court has a right under this section to settle the rights of each party in respect to the property of the other, and if need be to extinguish them." 122 Va., page 39.

*McCotter* v. *Carle, supra,* was decided in 1927, when the power to decree concerning the estate of the parties was limited to decrees dissolving a marriage or granting a divorce. There had been two divorce suits instituted by Mrs. McCotter, later Mrs. Carle, against her husband, J. K. McCotter. In the first suit, her prayer for a divorce from the bond of matrimony was denied. In her second suit, she was granted a divorce on the ground of desertion, which was later enlarged into a divorce from the bond of matrimony. It appeared that the prayer of her bill in the second suit made no reference to any property rights of the parties except as arose out of the marriage. No alimony was decreed, nor were the property rights of the parties decreed upon. Subsequently, she secured a verdict and judgment against McCotter.

In discussing the word "estate," in § 5111 of the Code of 1919, formerly § 2263, Codes of 1887 and 1904, and now § 20-107, Code of 1950, the Court said, "However broad an interpretation may be placed upon the 'estate of the parties,' it is clear that, when a divorce is not decreed, the power of the court to consider in any respect the estates or property rights of the parties, whether between themselves or otherwise is nonexistent." 149 Va. page 595.

Following the decision in that case, § 5111, Code of 1919, was

amended in 1934, so as to make it applicable also to cases where neither party was held entitled to a divorce. Acts 1934, page 515.

The case of *Watson* v. *Mose, supra,* was instituted by Edward W. Mose to set aside a deed made in 1923, by a special commissioner in a divorce proceeding between complainant and his former wife. Involved were questions whether the order of publication in the divorce suit was sufficient to apprise the defendant of the object of the proceeding, and whether there was laches on the part of the appellee, Mose, upon his discovery that his interest in a jointly acquired parcel of land had been sold by order of the court. In reference thereto, this Court said:

"While in divorce proceedings the court is given the power under Code, 1919, section 5111, to fix the rights of each party in the property of the other, these rights are such as are created by the marital relation, * * *." (165 Va. page 666). It then goes on to say that if "property rights which in no wise grew out of the marital relation were involved, then the order of publication was not sufficient to apprise the defendant." The record in the divorce case showed that the trial court, in the divorce case, had given to Mrs. Mose, the complainant, the half-interest of her husband in his real estate as alimony, "and this the law forbids." (165 Va. page 667.)

In none of the above three cases was there a situation involving the application of the present provisions of § 20-111 as amended by Acts 1948, page 593, subsequent to the decision of those cases. There was no estate by the entirety involved in either of them, and the particular facts therein did not require a decision upon the precise question before us as to extent of the jurisdiction of a chancery court.

The Constitution of Virginia, § 63, authorizes the General Assembly to confer on the courts power to grant divorces. Pursuant to that mandate, the General Assembly, by § 20-96 of the Code, gave to "circuit and corporation courts, on the chancery side thereof, and every court of this State exercising chancery jurisdiction," authority to annul or affirm marriages and to grant divorces.

Section 20-107, as amended, so far as pertinent, provides:

"Upon decreeing the dissolution of a marriage, and also upon decreeing a divorce, whether from the bond of matrimony or from bed and board, and upon decreeing that neither party is entitled to a divorce the court may make such further decree as it shall deem expedient concerning the estate and the maintenance of the parties,

or either of them, and the care, custody and maintenance of their minor children, * * *."

Thus, there is conferred upon the named courts the right not only to settle the status of the parties, but the right to further decree concerning their estates. *Gum* v. *Gum, supra,* 122 Va. page 38.

The word "estate" means "the interest which any one has in lands, or in any other subject of property." It "comprehends everything a man owns, real and personal, and ought not to be limited in its construction unless connected with some other word which must necessarily have that effect." Black's Law Dict. 3d Ed., pages 682, 683. *Neblett* v. *Smith,* 142 Va. 840, 851, 852, 128 S. E. 247, 250.

Section 20-111 provides that the entry of a decree of divorce from the bond of matrimony has the effect of extinguishing "all contingent rights of either consort in the real and personal property of the other then existing, or thereafter acquired, including the right of survivorship in real or personal property, title to which is vested in the parties as joint tenants or as tenants by the entirety, with survivorship as at common law, * * * and such estate by the entirety shall thereupon be converted into a tenancy in common."

Section 20-116 provides that, "In granting a divorce from bed and board, the court may decree that the parties be perpetually separated and protected in their persons and property. Such decree shall operate upon property thereafter acquired and upon the personal rights and legal capacities of the parties as a decree for a divorce from the bond of matrimony, * * *."

Code, §§ 20-107 and 20-111 gradually evolved from Code 1887, § 2263, subsequently Code 1919, § 5111. After a number of amendments, § 5111 was subdivided into several sections, including §§ 20-107 and 20-111.

Section 20-111 is cognate with § 20-107, and the two sections should be read and considered together.

Section 20-111 provides that divorce from the bond of matrimony extinguishes all contingent rights of either consort in the real and personal property of the other. If the word "estate" in § 20-107 was intended to embrace only contingent or marital rights, there would be no use in its provision that upon decreeing a divorce from the bond of matrimony, "the court may make such further decree as it shall deem expedient concerning the estate and the maintenance of the parties, or either of them, * * *."

We do not find any limitation in either § 20-96 or § 20-107, which

restricts the court to decreeing only with respect to the rights of the parties created by the marital relation. Neither section takes away from chancery courts any existing equity jurisdiction. Section 20-96 adds to their authority by conferring upon them jurisdiction of suits for divorce, a jurisdiction not inherent in such courts. Section 20-107 expressly confers upon such courts, after they have assumed jurisdiction and decreed as to the marital status, the further power to go forward in the same suit and exercise their general and inherent equity jurisdiction with respect to the estate of the parties, or either of them, just as they might do in an independent chancery suit for the settlement of property rights.

The policy of the law and Rules of Court, as well as the objects of pleadings are, and should be, to "prevent a multiplicity of suits, minimize costs," and do justice between the parties as directly and expeditiously as possible. *Brewer* v. *Brewer*, 199 Va. 753, 102 S. E. 2d 303.

Here, the lower court, a court of chancery, had jurisdiction of the parties, both with respect to divorce and to the settlement of their property rights; and the case was heard on issues made by the allegations in the pleadings and the prayers of the parties. No specific property of one party was directed to be transferred to the other in violation of law or established principles. The court properly decreed that jointly owned property be divided equally between husband and wife, in accordance with and by virtue of Code, § 20-111.

Lest there be any confusion as to what was said in our prior cases, we hold that § 20-107 does not limit the jurisdiction of the court to decree only concerning the contingent or marital rights of the parties. If that had been the intention of the legislature, it could have said so in language clear and unmistakable.

Any other conclusion would result in requiring the parties to institute another chancery suit to settle their property rights, where the same evidence would probably be produced, and the same issues raised. Another decision would be required from the court and, perhaps, one of the parties might again ask this Court for an adjudication of the matter now before us. Such a proceeding would be a deviation from our well established policy and rules. We do not believe that the purpose or spirit of § 20-107 requires this, certainly it is not its letter.

We find no error in the decree appealed from, that is, the decree of January 14, 1957, and the same is affirmed for the reasons stated.

*Affirmed.*

MILLER AND SNEAD, JJ., dissenting.

SNEAD, J., dissenting.

I cannot agree with that part of the majority opinion which holds that the trial court had jurisdiction in this proceeding, instituted for the primary purpose of obtaining a divorce, to determine the respective property rights of the litigants and partition their property.

The fact that the litigants do not contest jurisdiction is immaterial. If the court is without jurisdiction to do the things sought to be done, its actions are void and of no effect.

Neither in England prior to the matrimonial causes act of 1857, nor in Virginia prior to enactments giving equity courts jurisdiction, could divorces *a mensa et thoro* or *a vinculo matrimonii* be granted. Before enactment of such statutes, divorces in England were granted by an act of Parliament, and in Virginia by an act of the legislature. However, courts of equity in this Commonwealth, at a time when they had no general jurisdiction to grant divorces, did exercise jurisdiction to award alimony. There can be no doubt that equity has no inherent jurisdiction in respect to divorce. Jurisdiction in courts of equity, both as to divorces *a mensa* and *a vinculo*, is purely statutory *Gloth* v. *Gloth*, 154 Va. 511, 538, 539, 153 S. E. 879; *Bray* v. *Landergren*, 161 Va. 699, 704, 172 S. E. 252.

In *McCotter* v. *Carle*, 149 Va. 584, 592, 593, 140 S. E. 670, it is said:

"In Virginia, as in most of the States, it is an accepted doctrine, that, following the English theory of this branch of our jurisprudence, power to grant divorces originally resided in the legislature, that neither the law courts nor the equity courts have any inherent power to dissolve marriage, and that the authority in any court to decree a divorce is purely statutory. Consequently in section 63 of the Virginia Constitution the legislature was directed to confer power upon the courts to grant divorces. Chapter 205 of the Code of 1919, as also similar legislation in previous Codes, has its place in our statutory law in obedience to the mandate of the

Constitution. The statute (section 5105) provides that every court 'exercising chancery jurisdiction' shall have jurisdiction of divorce suits. The many limitations, both in respect to jurisdiction and procedure, placed upon divorce suits by the statute, differentiate the divorce case from ordinary suits in equity and render it a chancery case *sui generis*."

On pages 591, 592, the court also observed:

"It is contended on behalf of the defendant, as plaintiff in error, that it is settled doctrine in Virginia that, when a court of equity has acquired jurisdiction of a case on any equitable ground, it will proceed to grant complete relief, even to the extent of enforcing legal rights. Such a principle is established and recognized. * * *.

"The difficulty of the application of these propositions or this line of argument, in the instant case, lays in the fact that the two basic premises upon which the argument rests are failing in the instant case. In the first place the court of equity did not acquire jurisdiction of the divorce suit *upon any equitable grounds;* its jurisdiction was entirely statutory and limited. In the next place, the court *having denied the divorce,* the property rights of the parties in no sense constituted demands, which properly belonged to the subject of controversy and might have been litigated."

And on page 593 the court quoted with approval from Lile's Equity Pleading and Practice (1922 ed.) § 18: " 'Such jurisdiction is generally termed a limited statutory jurisdiction. Here the bill must affirmatively allege, and the plaintiff must prove the jurisdictional facts; and the jurisdiction may be legally exercised only in substantial compliance with the statute—otherwise the case is *coram non judice;* * * *.' "

It is obvious that in divorce proceedings ordinary equity jurisdiction is not invoked. Chapter 6, Title 20, Code of 1950, designates the courts that shall have jurisdiction of suits for annulling or affirming marriages and for divorces. But the jurisdiction conferred upon the courts is a limited statutory jurisdiction and it cannot be carried beyond the limits of the statutes themselves. Incidentally involved are the questions relating to alimony, and to a certain limited and narrow extent property rights, which are hereinafter defined.

The law is well established in this Commonwealth that in the absence of a contract between the husband and wife, no specific property of the husband can be decreed to the wife under the theory that the court having power to decree alimony may direct specific

property, real or personal, transferred to the wife. *Barnes* v. *American Fert. Co.*, 144 Va. 692, 708, 130 S. E. 902; *Bray* v. *Landergren*, *supra*, at p. 707; *Wilson* v. *Wilson*, 195 Va. 1060, 1067, 81 S. E. 2d 605.

In *Barnes* v. *American Fert. Co.*, *supra*, at p. 709 the court stated:

"In *Gum* v. *Gum*, 122 Va. 32, 94 S. E. 177, it was held that the term 'estates' as used in section 5111 embraces contingent right of dower, and the statute intended to give the court the right to settle the rights of each party in the property of the other, and if need be to extinguish them. Whilst we do not wish to be understood as saying that there might not possibly be some other property right than that of contingent rights of dower and courtesy which the court is empowered by the statute to settle in cases of divorce, we think it clear, certainly in the absence of agreement, that the power of the court is limited to the settlement of those property rights of the parties which have arisen by operation of law out of the marital relation, and the protection of their respective estates."

The statutes concerning the estates of husband and wife in Chapter 6 relating to divorces are §§ 20-107, 20-111, 20-116, Code 1950.

Section 20-111 provides that the entry of a decree of divorce from the bond of matrimony, has the effect of extinguishing all contingent rights of either consort in the real and personal property of the other then existing or thereafter acquired, "including the right of survivorship in real or personal property title to which is vested in the parties as joint tenants or as tenants by the entirety, with survivorship as at common law, * * *, and such estate by the entirety shall thereupon be converted into a tenancy in common."

It is to be noted that the first part of this section which relates to extinguishing contingent rights was originally the last sentence of § 5111 of the Code of 1936, having been added to that section after the revision of 1919, by successive amendments. Section 20-107 was section 5111 of the Code of 1919, which was also amended a number of times between the revision of 1919 and 1948.

Section 20-116 provides: "In granting a divorce from bed and board, the court may decree that the parties be perpetually separated and protected in their persons and property. Such decree shall operate upon property thereafter acquired, and upon the personal rights and legal capacities of the parties, as a decree for divorce from the bond of matrimony, except that neither party shall marry again during the life of the other."

It is manifest from the history and wording of §§ 20-111 and 20-116 that they are intended to have effect solely upon the marital rights of the parties in and to the property of each other, that is those rights created by the marriage; except that under § 20-111, by force of the statute itself, the divorce *a vinculo* has the effect of extinguishing "the right of survivorship in real or personal property title to which is vested in the parties as joint tenants or as tenants by the entirety, with survivorship as at common law, * * * and such estate by the entirety shall thereupon be converted into a tenancy in common."

It is to be noted that survivorship between joint tenants as well as tenants by the entirety has been abolished by Code § 55-20, with those exceptions mentioned in § 55-21. However, both types of tenures can exist where the deed or will creating such, expressly provides therefor. Therefore, these rights under such tenures do not arise by virtue of the marriage, but are created either by the acts of the husband and wife, or of some third person creating them.

The only possible argument which might be advanced in support of the proposition that a divorce court has jurisdiction under the statutes to settle the property rights of the parties is found in the language of § 20-107, Code 1950, which reads: "Upon decreeing the dissolution of a marriage, and also upon decreeing a divorce, whether from the bond of matrimony or from bed and board, and upon decreeing that neither party is entitled to a divorce the court may make such further decree as it shall deem expedient concerning the estate and the maintenance of the parties, * * *."

Does this section give the court jurisdiction and power to decree the rights of the parties in respect to the estate of each other? The word "estate", as used here, can have no meaning other than in respect to the rights of the parties resulting from and created by the marriage. *Barnes* v. *American Fert. Co., supra*, at p. 709; *Watson* v. *Mose*, 165 Va. 661, 666, 183 S. E. 428.

In *Watson* v. *Mose, supra*, at p. 666, Mr. Justice Gregory, speaking for the court said:

"* * * Did the court err in cancelling and annulling the deed from Barrett, special commissioner, which conveyed to Rosetta Green Mose the one-half interest of Edward Mose in this real estate? We think not. While in divorce proceedings the court is given the power under Code section 5111, to fix the rights of each party in the property of the other, *these rights are such as are created by the marital*

*relation,* and there is no warrant of law by which the specific property of the husband can be assigned or transferred to the wife as alimony without an agreement between the parties to that effect. * * *." (Italics supplied)

The words used in the statute (§ 20-107) "Upon decreeing the dissolution of a marriage, and also upon decreeing a divorce, whether from the bond of matrimony or from bed and board, * * * the court may make such further decree as it shall deem expedient concerning the estate * * * of the parties * * *.", make no distinction between a decree of annulment, divorce *a mensa* or *a vinculo,* and yet §§ 20-111 and 20-116 actually spell out the effect of such decrees upon the property rights of each of the spouses. It seems clear to me that the word "estate" as used in this section means only those rights and interests created by the marital relation.

I cannot agree that because a court of equity has taken jurisdiction of a divorce case it is thereby empowered to do complete justice between the parties and settle all their property rights. Equity as such has never acquired that jurisdiction. The courts having equity jurisdiction, are by statute given a special limited statutory jurisdiction, yet upon invocation of this special statutory jurisdiction they can no more settle the property rights, other than marital rights, in such suits than they could sell an infant married woman's real property, or have partition of property jointly owned by the husband and wife as is decreed in the case at bar.

I am convinced that in this proceeding the lower court was without jurisdiction to adjudicate that the property was owned "jointly and equally" between appellant and appellee, and order a partition thereof in this suit.

MILLER, J., joins in this dissent.