# Richmond

## WILLIAM STEPHEN BRAY, ETC. v. GRACE H. (BRAY) LANDERGREN.

January 11, 1934.

Present, All the Justices.

The opinion states the case.

*Robert A. Ryland,* for the appellant.

*Jesse, Phillips & Klinge* and *Percy A. Crittenden,* for the appellee.

Holt, J., delivered the opinion of the court.

On August 22, 1929, Grace H. Bray, in the Circuit Court of Arlington county, instituted suit against her husband, Stephen Bray, a non-resident. The prayer of her bill was that she be granted an absolute divorce from her husband, alimony, costs of suit, including counsel fees, and the custody of their child. The bill charges that the defendant owned certain real estate in Arlington county, describes it

and prays that allowances made be declared a lien upon it. There was personal service of process upon the defendant in the State of Utah, which service has the same effect as, and no other than, an order of publication duly executed. Code, section 6071. She also filed against said real estate a *lis pendens.*

There was no appearance and on February 25, 1930, that court entered this order: "It is therefore adjudged, ordered and decreed that the said Grace H. Bray and Wm. Stephen Bray be divorced from the bonds of matrimony which was created by the aforesaid marriage, and that said marriage be, and the same is hereby dissolved, but neither party hereto shall marry again within six months from the date of this decree; and the court doth adjudge, order and decree that the said Wm. Stephen Bray shall pay to the said Grace H. Bray as permanent alimony, annually, so long as both the said Wm. Stephen Bray and Grace H. Bray shall live, the sum of $600 which shall be paid to the said Grace H. Bray, on the 1st day of May of each year; that the said Wm. Stephen Bray shall pay to Walter T. McCarthy, counsel for Grace H. Bray, the sum of $100 within ten days from the date of this decree; that the care and custody of Elizabeth Bray, the infant child of the parties, be awarded to the said Grace H. Bray, with whom she shall remain, the said Grace H. Bray being a suitable and proper person to have the care and custody of the said Elizabeth Bray; and that the said Wm. Stephen Bray shall furnish the sum of $300 to the said Grace H. Bray, annually, for the maintenance, support and education of the said Elizabeth Bray, so long as the said Elizabeth Bray shall remain under the age of twenty-one years and unmarried; that the aforesaid payments of alimony and counsel fees shall be a charge upon said Lot No. 38 of Bradley's Subdivision of Woodmont; that this cause be and is hereby referred to J. H. Brewer, Jr., a commissioner in chancery for this court, to ascertain and report to this court the liens binding on said Lot No.

38 of Bradley's Subdivision of Woodmont, and order of their priority; * * *."

Afterwards and on January 27, 1931, plaintiff, who had intermarried with one Landergren, brought this suit in said court to subject the real estate, in her original bill described, to the payment of this judgment. Process was by publication. On April 7, 1931, the cause was transferred to the Corporation Court of the city of Alexandria. On March 1, 1932, sale was ordered, presumably to pay plaintiff's claim, although the record is silent as to this. On June 1, 1932, Stephen Bray entered a special appearance in which he set out the fact that in the original suit no personal process was had upon him, and claimed that the court was without jurisdiction to enter said decree; that the judgment for alimony was void and asked that it be vacated, annulled and stricken from the docket. On July 7, 1932, the court overruled his contentions, and that ruling is now before us on appeal.

■ Is this judgment for alimony which rests upon process executed out of the State upon a non-resident valid, and if so, to what extent is it valid?

This court has already defined alimony.

■ "Alimony is an allowance made to the wife out of the husband's estate or income upon a decree of separation." *Latham* v. *Latham,* 30 Gratt. (71 Va.) 307.

How is it to be paid?

■ "The general rule undoubtedly is, that the *income* of the husband, whether derived or to be derived from his personal exertions or from permanent property, or from both, is the fund from which alimony is decreed, and the amount, as already said, will depend upon the particular circumstances of each case." *Cralle* v. *Cralle,* 84 Va. 198, 6 S. E. 12, 14.

■ "Alimony is usually an allowance in money out of the husband's estate, but not the estate itself." *Lovegrove* v. *Lovegrove,* 128 Va. 449, 104 S. E. 804.

■■ When it is said that the income is the fund from which alimony should be paid, nothing more is meant

than that the decree is personal and should not undertake to set apart specific property for its satisfaction. It is a lien upon the husband's real estate for sums due and to be due and may be enforced as other liens are enforced. *Isaacs* v. *Isaacs,* 117 Va. 730, 86 S. E. 105, L. R. A. 1916B, 648.

■ The jurisdiction of our courts of equity in divorce cases is statutory. *McCotter* v. *Carle,* 149 Va. 584, 140 S. E. 670; *Chandler* v. *Chandler,* 132 Va. 418, 112 S. E. 856; *Blankenship* v. *Blankenship,* 125 Va. 595, 100 S. E. 538, and in Code, section 5111, as amended by Acts 1927 (Ex. Sess.), chapter 85, provisions are made for alimony, but they are not exclusive.

In this Commonwealth, and indeed in most of the States, divorces at early dates were by act of the legislature, but courts of equity, at a time when they had no general jurisdiction to grant them, asserted and exercised jurisdiction to decree alimony.

In 1730 jurisdiction to pronounce a sentence of divorce in cases of consanguinity and affinity were conferred upon the general court. 4 Hen. Stats. 245. After the Revolution in 1788 (12 Hen. Stats. 688), this power was transferred to the Superior Court of Chancery and afterwards to the Superior Courts of Law, and not until 1827 was it extended (Acts 1826-7, p. 21, ch. 23. 1 Minor's Inst., p. 299).

In 1810, Ann Purcell, who was living apart from her husband, brought an independent suit for alimony. *Purcell* v. *Purcell,* 4 Hen. & M. (14 Va.) 507. The jurisdiction of the court was challenged.

The chancellor said: "If the jurisdiction of this court were now to be settled upon English precedents, there might be some doubt about the question, from the cases, as brought into one view, by Mr. Fonblanque; but I shall leave this clashing of English judges to be reconciled among themselves, and take up the question upon first principles.

"I hold, that in every well regulated government there must somewhere exist a power of affording a remedy

where the law affords none; and this peculiarly belongs to a court of equity; and as husband and wife are considered as one person in law, it is evident, that in this case the law can afford no remedy; which is universally admitted to be a sufficient ground to give this court jurisdiction; and therefore it must entertain the bill, if there be sufficient proof of the marriage."

It will be observed that jurisdiction was here taken because law afforded no other relief. Another appealing reason is sometimes assigned.

"Although the power to grant divorces had become identified with the legislative power as the result of long usage, the determination of the legal consequences flowing therefrom was so bound up with the property rights of the parties and so essentially judicial in its nature, that the courts were loath to allow the legislature to assume the same. Consequently, although courts of chancery would not assume jurisdiction over divorce in the absence of direct authorization, they nevertheless held that their general equity jurisdiction must be deemed to include the right to award alimony in a proper case, inasmuch as the ecclesiastical courts, to which such jurisdiction rightfully belonged at common law, had never constituted a part of our judicial system. Their conclusion was further strengthened by the fact that in England, during the commonwealth, the ecclesiastical courts were abolished, and in consequence thereof their entire jurisdiction in cases of alimony and of separate maintenance devolved, as a matter of course and necessity, upon the court of chancery as the only tribunal fitted and competent to decide thereon." 1 R. C. L., p. 876.

■ "Alimony has its origin in the legal obligation of the husband, incident to the marriage state, to maintain his wife in a manner suited to his means and social position, * * *." *Harris* v. *Harris,* 31 Gratt. (72 Va.) 13.

■ "But the power of courts of equity to decree alimony did not originate in any statute. It is a power inherent in them. *Stewart* v. *Stewart,* 27 W. Va. 167, 172,

173, and cases cited; *Carr* v. *Carr,* 22 Gratt. (63 Va.) 168, and notes. It had its origin in the legal obligation of the husband, incident to the marriage state, to maintain his wife in a manner suited to his means and social position. *Harris* v. *Harris,* 31 Gratt. (72 Va.) 17." *Reynolds* v. *Reynolds,* 68 W. Va. 15, 69 S. E. 381, 385, Ann. Cas. 1912A, 889.

"Alimony does not arise from any business transaction, but from the relation of marriage. It is not founded on contract, express or implied, but on the natural and legal duty of the husband to support the wife. The general obligation to support is made specific by the decree of the court of appropriate jurisdiction." *Audubon* v. *Shufeldt,* 181 U. S. 575, 21 S. Ct. 735, 736, 45 L. Ed. 1009.

 The right to an independent action is now generally recognized. "* * * in a very decided majority of the States it is now the settled rule that the jurisdiction of the equity courts to award alimony is not merely incidental to suits for divorce or separation, but is inherent, and that alimony may be awarded in an independent suit therefor." 1 R. C. L., p. 879.

It is said, however, that this power to award alimony by a court of equity, independent of statute, does not exist where the divorce is absolute because in such a case there was no duty to support under the common law. 1 R. C. L., p. 877.

In England the ecclesiastical courts in which jurisdiction rested had no power to decree a divorce *a vinculo* except for causes which rendered the marriage void *ab initio.* 1 Minor's Inst., p. 302; note, 60 Am. Dec. 667.

 A marriage void *ab initio* is no marriage at all. The woman was never a wife and so there was no obligation upon the supposed husband to support her. Since there was no obligation to support her, of course equity had no power to compel support.

The situation in this country has now definitely changed. Unnumbered cases arise in which absolute divorces are granted for supervenient causes. In such cases the obligations to support are as cogent as they are when there is

separation only. If a statute authorized these absolute decrees, but gave the wife no right to alimony or to support from her delinquent husband, we would have a right without a remedy which would be as appealing as was the situation in *Purcell* v. *Purcell, supra.* The same reasons for the intervention of equity which prevailed in one case, obtains in the other.

The power to award alimony in Virginia is, of course, now given by statute, but its incidental characteristics are recognized. *Barnes* v. *American Fert. Co.,* 144 Va. 692, 130 S. E. 902; *Reynolds* v. *Reynolds, supra.*

Mr. Freeman, in a note to 60 Am. Dec. 667, said: "And there are cases which hold that this principle of the incidental character of alimony extends to the divorce unknown to the ecclesiastical law—the divorce absolute, or *a vinculo matrimonii,* for causes other than marital incapacity; and therefore that, though not expressly authorized to grant alimony in such cases, the courts may nevertheless do so; *Harris* v. *Harris,* 31 Gratt. [72 Va.] 13, 17; see *Chaires* v. *Chaires,* 10 Fla. 308, 312; *Campbell* v. *Campbell,* 37 Wis. 206, 220. But this doubt, of whatever weight, is removed generally by statutes which provide for alimony with all kinds of divorce."

Notwithstanding this power, inherent, incidental, and express, the court cannot set apart for the wife any specific property. *Almond* v. *Almond,* 4 Rand. (25 Va.) 662, 15 Am. Dec. 781; *Cralle* v. *Cralle, supra;* and *Lovegrove* v. *Lovegrove, supra.*

The decree is general, *in personam,* and binds the defendant's real estate as does any other decree.

In *Trimble* v. *Trimble,* 97 Va. 217, 33 S. E. 531, 533, the court did say that such a decree might be made a specific charge upon the land in the bill and proceedings mentioned. There the lower court perpetually enjoined and restrained the husband from disposing of or encumbering his real estate. This was held to be error. Judge Buchanan said: "The sums decreed to be paid the wife from time to time should have been made a charge upon

the land in the bill and proceedings mentioned. This would have secured their payment, and been less burdensome upon the husband. The decree will be amended in this respect, and as amended affirmed."

This, however, was not necessary. The judgment was a lien on this land by operation of law and it was bound for all sums due and to become due. *Isaacs* v. *Isaacs, supra.* While the court did what was done here it is to be remembered that in the *Trimble Case* all parties were before the court and the decree was personal.

It remains for us to ascertain if any constitutional rights of the defendant have been violated. This right is both substantive and procedural.

*Pennoyer* v. *Neff,* 95 U. S. 714, 24 L. Ed. 565, and kindred cases, hold that a personal judgment cannot be rendered against a non-resident defendant, present only by substituted service. In this case the defendant was present by virtue of personal service made out of the State which gave the court only such jurisdiction as would have attached on an order of publication.

In 1 R. C. L., p. 884, it is said: "Owing to the fact that an action for divorce is in the nature of a proceeding *in rem,* under certain circumstances a court may render a valid decree of divorce although it never acquired actual jurisdiction of the person of the defendant. Such jurisdiction, however, though sufficient to support a decree changing the marital status, will not necessarily sustain a judgment for alimony and costs. A judgment for the latter cannot be supported on the ground that they are mere incidents of, and subordinate to, the right to a divorce; for a decree for the payment of money as alimony is essentially one *in personam,* and is therefore totally void in the absence of actual jurisdiction over the person or property of the one against whom it is awarded. Constructive service, in itself, whether made by publication or by actual service of process upon the defendant, without the State, is generally insufficient even though the defendant be domiciled therein. It is evident, therefore,

that an adjudication of a wife's right to alimony, whether rendered in an independent action or as an incident to a suit for divorce, brought by either husband or wife, is void both in the domestic forum and elsewhere as against a defendant over whom the court acquired no jurisdiction other than by constructive service." To the same effect see 19 C. J., section 661.

But this general rule, everywhere recognized, is sometimes modified where property of the non-resident defendant sought to be subjected is within the jurisdiction of the court.

In 19 C. J., section 661, p. 288, it is said: "It has been held, however, that property within the jurisdiction of the court may be subjected to a decree granting alimony against a non-resident defendant who has been constructively served with process in a divorce suit; but the soundness of this rule has been questioned; and the rule has not been extended to money in the hands of a third person. Such a decree has, of course, no vitality except as to the property. It has been held that, the proceedings in such cases being in their nature *in rem,* the property must be described in the petition for divorce and alimony, also that the notice of publication should contain a description of the husband's property within the jurisdiction of the court and also the nature of the relief demanded. A mere general personal judgment or decree in such cases is not sufficient. It has been held that the property of the husband need not be attached, or formally seized, but there is authority to the effect that, even if the property is not seized under an attachment or some other writ, some control of it must be taken or assumed by the court, as by the appointment of a receiver or the like." See, also, 1 R. C. L., p. 886.

On this subject doctors differ and courts are not in accord. Some of them hold that such a proceeding is *in rem* and that a court may subject property within its jurisdiction to the satisfaction of its decree. *Twing* v. *O'Meara,* 59 Iowa 326, 13 N. W. 321; *Wesner* v. *O'Brien,* 56 Kan. 724,

44 Pac. 1090, 32 L. R. A. 289, 54 Am. St. Rep. 604; *Blackinton* v. *Blackinton,* 141 Mass. 432, 5 N. E. 830, 55 Am. Rep. 484; *Hervey* v. *Hervey,* 56 N. J. Eq. 166, 38 Atl. 767; *Bailey* v. *Bailey,* 127 N. C. 474, 37 S. E. 502; *Reed* v. *Reed,* 121 O. St. 188, 167 N. E. 684, 685, 64 A. L. R. 1384.

In note 29 A. L. R. p. 1390, it is said: "The rule seems to be that attachment or actual seizure of the property at the beginning or during the pendency of a suit for alimony or maintenance is not essential to the court's jurisdiction to render a decree therefor, on substituted service against a non-resident husband who does not appear, provided some other method of proceeding against the property is taken in the case."

On the other hand, and on sounder principles, we think, it is held that there must be some seizure of the property before a valid final decree sequestrating it can be rendered. *Matthews* v. *Matthews,* 247 N. Y. 32, 159 N. E. 713, 714. The court there said: "And it is not enough that at the time judgment is rendered he in fact has property within our jurisdiction. The right to dispose of it rests upon a prior seizure. Only so does the defendant receive notice that he has rights which should be protected. It must therefore appear, before a judgment is entered purporting to deal with a non-resident's property, that by attachment, by injunction, by sequestration, in some manner, the court has laid hands upon his property within the State. *Helme* v. *Buckelew,* 229 N. Y. 363, 371, 128 N. E. 216; *Pennoyer* v. *Neff,* 95 U. S. 714, 24 L. Ed. 565."

In *Darby* v. *Darby,* 152 Tenn. 287, 277 S. W. 894, 42 A. L. R. 1379, the chancellor in the court below held "that the award for alimony in the divorce decree without personal service on the defendant, or without any property having been impounded, was a nullity."

In *Holmes* v. *Holmes* (D. C.), 283 Fed. 453, 455, the court said: "It is settled law that a State may, consistently with due process of law and without violating any provision of the Federal Constitution, subject property located within its borders to claims existing against the owner of such

property, whether or not the latter be a resident of such State, and whether or not he be served with personal process within the State in legal proceedings instituted against him in a court of competent jurisdiction over the subject matter thereof, to enforce such a claim, provided that at the commencement of such proceedings the property in question be brought under the control of such court, and an opportunity to contest said claim be afforded to the defendant therein by publication of notice, by personal service of process outside of the State, or by some other form of service of process, actual or constructive; it being immaterial whether the proceedings be at law or in equity, so long as they be essentially *in rem*. *Pennoyer* v. *Neff,* 95 U. S. 714, 24 L. Ed. 565; *Arndt* v. *Griggs,* 134 U. S. 316, 10 S. Ct. 557, 33 L. Ed. 918; *Pennington* v. *Fourth National Bank of Cincinnati,* 243 U. S. 269, 37 S. Ct. 282, 61 L. Ed. 713, L. R. A. 1917F, 1159."

In *Thompson* v. *Tanner,* 53 App. D. C. 3, 287 Fed. 980, 984, property of an absent defendant was seized pending the progress of the suit and was subjected to the burden of a decree there entered. The court said: "Such a decree, based upon personal service on the defendant within the jurisdictional limits of the court, is good the world over; but, when based upon constructive service, it is void, unless jurisdiction is acquired by seizure of property of the defendant within the immediate jurisdiction of the court, when the judgment will be held valid only in respect of that property, and within the jurisdiction of the court rendering it. The general rule as to jurisdiction of the State over property, within its limits, for the protection of its citizens, was stated in *Pennoyer* v. *Neff,* 95 U. S. 714, 723, 24 L. Ed. 565."

The late case of *Pennington* v. *Fourth National Bank,* 243 U. S. 269, 37 S. Ct. 282, 283, 61 L. Ed. 713, L. R. A. 1917F, 1159, is very much in point. Mrs. Pennington obtained a judgment in a State court of Ohio, and joined as a defendant the bank in which her husband had a deposit. That bank was enjoined from making payments to the

husband, and later, under orders of the court, made payments to the wife. Afterwards the husband made demand on the bank for the full amount due him on his account, and in support of that demand said that he was a non-resident of the State, had been served with process by publication only and had not voluntarily appeared. Judgment was refused.

The court pointed out that service by publication on a non-resident defendant cannot support a judgment *in personam,* but said that garnishment or proceedings by attachment were *quasi in rem,* and could be asserted whether the claim was an admitted debt or a contested demand, and then in this statement touched the heart of plaintiff's claim:

"The only essentials to the exercise of the State's power are presence of the *res* within its borders, its seizure at the commencement of proceedings, and the opportunity of the owner to be heard. Where these essentials exist a decree for alimony against an absent defendant will be valid under the same circumstances and to the same extent as if the judgment were on a debt—that is, it will be valid not *in personam,* but as a charge to be satisfied out of the property seized."

The Arlington county court had authority to seize this property and to hold it subject to such judgment as it might pronounce in favor of the wife. Had that been done no question as to the constitutionality of its proceedings could have been raised, and the doctrine of *Pennoyer* v. *Neff* could have had no application, but "seizure at the commencement of the proceedings" was essential and there was none. There was nothing in the nature of sequestration. In the instant case the property was not seized before judgment.

It is not enough to show that the court had power to enter the contested judgment. It must also appear that it proceeded in due and ancient form.

"So a departure from established modes of procedure will often render the judgment void; thus, the sentence of

a person charged with felony, upon conviction by the court, without the intervention of a jury, would be invalid for any purpose. The decree of a court of equity upon oral allegations, without written pleadings, would be an idle act, of no force beyond that of an advisory proceeding of the chancellor. And the reason is, that the courts are not authorized to exert their power in that way." *Windsor* v. *McVeigh*, 93 U. S. 274, 283, 23 L. Ed. 914. In the case in judgment there was want of procedural jurisdiction. *Southern Ry. Co.* v. *Commonwealth of Virginia* (Dec. 1933), 54 S. Ct. 148, 78 L. Ed. ____.

One of the two methods of procedure is necessary. A court may pronounce a general judgment and may afterwards enforce such lien as attaches thereto by operation of law. It may also, where a general judgment is not proper, in some manner lay its hands upon property sought to be sequestrated, and then subject it to its decree. Here it was not possible to enter general judgment, and no property was seized before a decree for divorce was entered.

 A *lis pendens* is not a seizure. It is restrictive only and but serves to warn others that rights which they may acquire will be subject to any valid judgment entered. *Houston* v. *Timmerman*, 17 Ore. 499, 21 Pac. 1037, 4 L. R. A. 716, 11 Am. St. Rep. 848.

 There was no laches. Not only did Mr. Bray promptly protest, but there had been no change in the situation of the parties. The judgment of the court was void. When a judgment is declared to be void the possibilities of language have been exhausted. It may be assailed anywhere at any time and in any court. *Barnes* v. *American Fert. Co., supra*; 33 C. J. 1072.

For reasons stated, the decree appealed from should be reversed, and it is so ordered.

*Reversed.*