## Richmond

## ELSWICK NEWPORT v. FLORA NEWPORT

June 9, 1978

Record No. 761489

Present: All the Justices

*Robert E. Swan* for appellant.

*Joseph L. Duvall (Geo. P. Blackburn, Jr.; Duvall, Tate & Bywater, Ltd.,* on brief) for appellee.

HARRISON, J., delivered the opinion of the Court.

The issue here is whether in Virginia a wife's right to alimony survives an absolute divorce obtained by the husband in an *ex parte* proceeding in another state.

Elswick Newport and Flora Newport were married in 1947 and moved to Virginia in 1966. The husband, while stationed in

Vietnam from April to November, 1972, wrote his wife that he intended to divorce her. Upon his return to the United States Elswick Newport established his residence in Nevada, and on April 2, 1973, he was awarded an *ex parte* divorce from appellee. The only relief granted the husband by the Nevada court was a decree "dissolving the bonds of matrimony heretofore and now existing between the parties".

In May, 1974, Flora Newport, who had been a resident of Fairfax County, Virginia, since 1966, filed her bill of complaint against appellant for separate maintenance and support, alleging that her husband had failed to provide her sufficient support and had left her in "necessitous circumstances". The husband filed an answer in which he alleged that his wife was not eligible for support since a final decree of divorce had been entered in his favor on April 2, 1973, by the Second Judicial District Court of the State of Nevada, in and for the County of Washoe. The husband also filed a cross-bill seeking a partition of their residence property then occupied by the wife. The lower court accorded full faith and credit to the Nevada divorce decree insofar as that decree terminated the marital status of the parties, but held that the Nevada court was without power to adjudicate the question of alimony between the parties, and that its decree dissolving the marriage did not terminate the wife's right to support.

Appellant claims that the court below was without authority, either by statute or under the provisions of the common law, to award the wife permanent alimony, as it did, after a final decree of divorce had been entered by a court of another state having jurisdiction to terminate the marriage. He relies upon Code §20-107, which, in pertinent part, provides that:

> "Upon decreeing the dissolution of a marriage, and also upon decreeing a divorce, whether from the bond of matrimony or from bed and board, and upon decreeing that neither party is entitled to a divorce, the court may make such further decree as it shall deem expedient concerning the estate and the maintenance and support of the parties, or either of them. . . ."[1]

Appellant argues that none of the situations detailed by the Code existed in the instant case when the lower court entered its final decree.

The cases which control generally our decision here are *Van-*

---

[1] The 1977 amendment deleted "estate and the" following "concerning the" near the middle of the first sentence of the first paragraph of §20-107.

derbilt v. Vanderbilt, 354 U.S. 416 (1957); Armstrong v. Armstrong, 350 U.S. 568 (1956); and Estin v. Estin, 334 U.S. 541 (1948). In Estin the wife obtained in New York a judgment of separation and an award of permanent monthly alimony. The husband moved to Nevada, became domiciled there, and obtained an absolute divorce from his wife in an action in which she was not personally served and did not appear. When the husband ceased making alimony payments, the wife sued for the arrearage and recovered a judgment in the New York court. The Supreme Court affirmed, holding that full faith and credit did not require that New york recognize the ex parte Nevada decree as one which terminated the wife's right under the decree of New York for alimony. The Court, applying the law of the State of New York, found that the right to alimony did survive the divorce decree, and that Nevada could not adjudicate the question of alimony because the wife was not personally served with process and did not appear. Mr. Justice Douglas, speaking for a majority of the Court, said:

> "The result in this situation is to make the divorce divisible - to give effect to the Nevada decree insofar as it affects marital status and to make it ineffective on the issue of alimony. It accommodates the interests of both Nevada and New York in this broken marriage by restricting each State to the matters of her dominant concern.

> "Since Nevada had no jurisdiction to alter respondent's rights in the New York judgment, we do not reach the further question whether in any event that judgment would be entitled to full faith and credit in Nevada. [Citations omitted.] And it will be time enough to consider the effect of any discrimination shown to out - of - state ex parte divorces when a State makes that its policy." 334 U.S. at 549.

The decision in Estin left in doubt the status of a wife's right to alimony which had not been reduced to judgment prior to the entry for the husband of an ex parte divorce decree. See Annot., 28 A.L.R.2d 1378 (1953). In Armstrong the husband, a resident of Florida, obtained a constructive service divorce from his wife who was a resident of Ohio. In its decree the Florida court stated that the wife had "made no showing of any need on her part for alimony" and decreed that no award of alimony be made to her. Later the wife obtained a judgment in Ohio granting her alimony. The question before the Supreme Court was whether the action of

the Ohio court in awarding alimony had the effect of denying full faith and credit to the Florida decree. The Supreme Court interpreted the Florida decree as being one which did not adjudicate the absent wife's right to alimony but merely asserted that it would not pass on the question of alimony, and that, therefore, the court in Ohio, where the wife resided, in awarding alimony to the wife, did not fail to give full faith and credit to the Florida decree.

Significantly, in a concurring opinion in *Armstrong*, written by Mr. Justice Black, and agreed to by Mr. Chief Justice Warren, Mr. Justice Douglas and Mr. Justice Clark, the view was expressed that Florida had in fact dealt with the question of alimony. The concurring Justices rested their opinion on the ground that a judgment denying alimony to a nonresident wife in an *ex parte* divorce proceeding was invalid as a matter of due process, and therefore the decree of the Florida court was not entitled to full faith and credit. Mr. Justice Black thought that *Estin* was controlling, and said:

> "The fact that Mrs. Estin's claim to support had been reduced to judgment prior to divorce while Mrs. Armstrong's had not is not a meaningful distinction. Mrs. Armstrong's right to support before judgment, like Mrs. Estin's right to support after judgment, is the kind of personal right which cannot be adjudicated without personal service. [Citation omitted.] " 350 U.S. at 577.

The facts in *Vanderbilt* more nearly parallel the facts in the instant case. The parties there were married in 1948 and were living in California at the time of their separation in 1952. The wife moved to New York in February, 1953. In March, 1953, the husband filed suit for divorce in Nevada and obtained a decree of final divorce which provided that both husband and wife were "freed and released from the bonds of matrimony and all the duties and obligations thereof. . .". The wife was not served with process in Nevada and did not appear.

In April, 1954, Mrs. Vanderbilt instituted an action in New York praying for separation from her husband and for alimony. The husband appeared specially and contended that the Full Faith and Credit Clause of the United States Constitution compelled the New York court to treat the Nevada divorce as having ended the marriage and as having destroyed any duty of support that he owed the wife. The New York court found the Nevada decree valid insofar as it effectively dissolved the marriage, but, nevertheless,

directed the husband to make certain designated support payments to the wife. The Supreme Court, in an opinion by Mr. Justice Black, held:

"The factor which distinguishes the present case from *Estin* is that here the wife's right to support had not been reduced to judgment prior to the husband's *ex parte* divorce. In our opinion this difference is not material on the question before us. Since the wife was not subject to its jurisdiction, the Nevada divorce court had no power to extinguish any right which she had under the law of New York to financial support from her husband. It has long been the constitutional rule that a court cannot adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant. Here, the Nevada divorce court was as powerless to cut off the wife's support right as it would have been to order the husband to pay alimony if the wife had brought the divorce action and he had not been subject to the divorce court's jurisdiction. Therefore, the Nevada decree, to the extent it purported to affect the wife's right to support, was void and the Full Faith and Credit Clause did not obligate New York to give it recognition." [Footnotes omitted.] 354 U.S. at 418-19.

Counsel for appellant argues that *Estin, Armstrong* and *Vanderbilt* stand only for the proposition that whether the right of a wife to alimony survives an *ex parte* divorce decree which dissolves a marriage depends on the law of the state involved. He points specifically to the State of Pennsylvania which does not allow alimony to be awarded subsequent to a final divorce and cites *Stambaugh* v. *Stambaugh*, 358 Pa. 147, 329 A.2d 483 (1974), where a husband left Pennsylvania to obtain an *ex parte* Florida divorce. Subsequently, the wife was denied alimony. *See also Brewster* v. *Brewster*, 204 Md. 501, 105 A.2d 232 (1954); *Yow* v. *Yow*, 243 N.C. 79, 89 S.E.2d 867 (1955); and *Rodda* v. *Rodda*, 185 Or. 140, 200 P.2d 616, *cert. denied* 337 U.S. 946 (1948).

The entitlement of a wife to alimony was clearly established in *West* v. *West*, 126 Va. 696, 101 S.E. 876 (1920), where Judge Prentis, later Chief Justice, referring to a marriage between a man and a woman solemnized one day, that night consummated and terminated the following day, held:

"As the result of that marriage and condonation, he incurred responsibilities from which he cannot and should not escape.

Among these responsibilities are his duty, under Code, 1919 sec. 5107, to pay the sums necessary for the maintenance of the woman and to enable her to carry on the suit, and, under section 5111, to pay such proper permanent alimony upon the dissolution of the marriage as the court may decree." 126 Va. at 699, 101 S.E. at 877.

The "divisible divorce concept" under which full faith and credit is given to a divorce decree as to dissolution of a marriage but not as to property and support rights, recognized in *Estin, Armstrong and Vanderbilt*, was also recognized by us in *Isaacs* v. *Isaacs*, 115 Va. 562, 79 S.E. 1072 (1913). There the wife was awarded a divorce *a mensa et thoro* and alimony by a Virginia court. Subsequently, her husband obtained an absolute divorce from her in Kentucky and sought to interpose the Kentucky decree as a bar to enforcement of the wife's lien on his Virginia real estate for alimony payments. While both states had personal jurisdiction over the parties, the alimony awarded by the Virginia court was made before the Kentucky proceedings had been instituted. We recognized the Kentucky decree as a final dissolution of the marriage, but declined to give it effect as to termination of the lien for past and future installments of alimony payable under the Virginia decree.

Counsel for appellee understandably relies upon language found in *Osborne* v. *Osborne*, 215 Va. 205, 207 S.E.2d 875 (1974) to support her position. The Osbornes were married in 1962 and lived in Prince William County until 1970 when they moved to Texas. In July, 1971, the parties separated, and Mrs. Osborne returned to Prince William. In February, 1972, Osborne filed a petition in Texas for divorce. Although the wife was not served with process within the State of Texas, she made a general appearance and filed a general denial to Osborne's petition.

In August, 1972, Mrs. Osborne filed a suit in Prince William for an absolute divorce from her husband, alleging constructive desertion. Osborne was personally served with process and filed a plea in abatement asserting that all matters in controversy should be adjudicated in the Texas court. The lower court denied the plea and ordered Osborne to pay certain sums for child support and for alimony *pendente lite*. Thereafter, the Texas court granted Osborne an absolute divorce, gave Mrs. Osborne custody of the children, and directed him to pay $125 per month for the support of each child. Osborne then filed a second plea in abatement,

seeking dismissal of the Prince William County, Virginia cause on the ground that all matters in controversy had been settled by the final judgment of the Texas court. The lower court overruled Osborne's plea in abatement, recognized the Texas decree of divorce as a dissolution of the Osborne marriage, but asserted continuing jurisdiction over the matters of child custody, child support and alimony. We held on appeal that the Texas decree must be given full faith and credit as to Mrs. Osborne's marital status, and as to her rights to property and support for herself.

Important to our decision in *Osborne* was the fact that Texas had personal jurisdiction over Mrs. Osborne and gave her the opportunity to litigate her rights. Further, the Texas statutes dealing with the division of property upon dissolution of a marriage provide that the court shall divide the estate of the parties in a manner that the court shall deem just and right. In making the division the court considers virtually the same factors that are considered by a Virginia court in awarding alimony. We said in *Osborne:* "Despite the significant distinctions in the assets that can be used, the flexibility available, and the duration of the award, we conclude that the Texas scheme of economic adjustment upon the dissolution of a marriage seeks to protect the same right as does the award of alimony in Virginia." 215 Va. at 210, 207 S.E.2d at 880. We concluded that if Mrs. Osborne should attempt to raise again in a Texas court the issue of the property division or support for herself, she would be barred by the principle of *res judicata;* and that we were bound by the Texas decision and could not permit Mrs. Osborne to relitigate in Virginia a right which had already been determined by the Texas court.

We have recognized that the general rule, supported by the great weight of authority, is that full faith and credit will be accorded a foreign divorce decree as to property and support rights, as well as to marital status, where the divorce court had personal jurisdiction over the parties; and further, that some jurisdictions have rejected the "divisible divorce" doctrine and have given full faith and credit for all purposes to all foreign *ex parte* divorce decrees. In *Osborne* we left open as undecided the question which is before us in the instant case. Here the Nevada final decree of divorce was entered before, rather than after, permanent alimony was decreed by the trial court of Virginia. However, while Nevada had no personal jurisdiction over the wife, Virginia did have personal jurisdiction over the appellant-husband.

The considerations that permit the state of the matrimonial domicile to change the marital status of the parties by an *ex parte* divorce proceeding were well stated in *Estin*, where it was said:

"Marital status involves the regularity and integrity of the marriage relation. It affects the legitimacy of the offspring of marriage. It is the basis of criminal laws, as the bigamy prosecution in *Williams* v. *North Carolina* [317 U.S. 287 (1942)] dramatically illustrates. The State has a considerable interest in preventing bigamous marriages and in protecting the offspring of marriages from being bastardized. The interest of the State extends to its domiciliaries. The State should have the power to guard its interest in them by changing or altering their marital status and by protecting them in that changed status throughout the farthest reaches of the nation. For a person domiciled in one State should not be allowed to suffer the penalties of bigamy for living outside the State with the only one which the State of his domicile recognizes as his lawful wife. And children born of the only marriage which is lawful in the State of his domicile should not carry the stigma of bastardy when they move elsewhere. These are matters of legitimate concern to the State of the domicile. They entitle the State of the domicile to bring in the absent spouse through constructive service. In no other way could the State of the domicile have and maintain effective control of the marital status of its domiciliaries." 334 U.S. at 546-47.

The considerations which impel us to hold that the legal obligation of a husband to support his wife may not be extinguished by a court lacking personal jurisdiction of the wife are equally as strong. In *Eaton* v. *Davis,* 176 Va. 330, 338, 10 S.E.2d 893, 897 (1940), we observed:

"The word alimony comes from the Latin *alimonia,*- 'sustenance,' and means, therefore, the sustenance or support of the wife by her divorced husband. It stems from the common-law right of the wife to support by her husband, which right, unless the wife by her own misconduct forfeits it, continues to exist even after they cease to live together. Alimony has as its sole object the support of the wife, and is not to be considered a property

settlement upon a dissolution of the marriage. It may, however, take the form of either a lump-sum payment or the more usual periodic payments."

In summary, the duty of a husband to support his wife is a moral as well as a legal obligation; it is a marital duty, in the performance of which the public as well as the parties are interested; it is a duty which is an incident to the marriage state and arises from the relation of the marriage; and it is an inherent right which may be asserted in a divorce suit or in an independent suit therefor. *See Hughes* v. *Hughes,* 173 Va. 293, 4 S.E.2d 402 (1939); *Capell* v. *Capell,* 164 Va. 45, 178 S.E. 894 (1935); *Bray* v. *Landergren,*161 Va. 699, 172 S.E. 252 (1934); *West* v. *West,* 126 Va. 696, 101 S.E. 876 (1920).

The right of a wife to support is of such importance to the community, as well as to the parties, that it survives an absolute divorce obtained by her husband in an *ex parte* proceeding in another state. Thus we affirm the decree of the lower court which accorded full faith and credit to the Nevada divorce decree insofar as that decree terminated the marital status of appellant and appellee; decreed that the Nevada court was without power to adjudicate the question of alimony; and held that the Nevada decree did not terminate appellee's right to support by appellant.

*Affirmed.*