PRESENT:  All the Justices

ERIN MARIE COSTER EVANS

                                              OPINION BY
v.  Record No. 201108                   JUSTICE D. ARTHUR KELSEY
                                           JULY 15, 2021

JAMES AUGUST EVANS, JR.

### FROM THE COURT OF APPEALS OF VIRGINIA

The circuit court vacated as void ab initio a portion of an earlier divorce decree that had ordered a father to pay child support because the court issuing the support award never acquired personal jurisdiction over the father.  The Court of Appeals affirmed the circuit court's vacatur decision, as do we.

### I.

Erin Marie Coster Evans and James August Evans, Jr., were married in Virginia in 1999.  After having three children, the parties separated in 2004.  At the time of separation, the marital home was in Virginia Beach.  In 2005, the parties executed a property settlement agreement in Virginia Beach that contained a provision requiring Mr. Evans to pay child support in the amount of $1,000 per month, beginning on July 1, 2005.  At some point during the parties' separation, Ms. Evans moved to Martinsville, the county seat of Henry County, Virginia.

In December 2005, Ms. Evans filed for divorce in the Henry County Circuit Court.  The complaint stated that Ms. Evans's last contact with Mr. Evans was in November 2005.  She did not state whether the contact was in person or by mail, phone, email, or otherwise.  The complaint identified Mr. Evans's "last known place of abode" as Virginia Beach.  J.A. at 2.  Ms. Evans stated that her current residence was in Henry County.  Seeking an order of publication, Ms. Evans filed an affidavit stating that Mr. Evans could not be found and that she had used due diligence to locate him.  In a later deposition submitted to the divorce court, Ms. Evans said that

she had used her "best efforts to try to locate" him, but the only specific effort that she mentioned was calling his family members. *Id.* at 23-24. Ms. Evans did not specifically allege, however, that Mr. Evans had been purposefully evading service of process or had absconded from the jurisdiction to avoid being served by her.

Pursuant to Code § 8.01-316(A)(1)(b), the clerk of court issued an order of publication. *See* Code § 8.01-316(A)(3) (authorizing the clerk to issue the order under subsection (A)(1)). According to the terms of the order, the clerk posted a notice of the civil action on the front door of the courthouse for the Henry County Circuit Court and published a notice in a local newspaper, the *Martinsville Bulletin*, for four weeks. The order included a space for certifying that it had been "mailed to the defendant." J.A. at 18. Because no mailing address had been provided, the space remained blank.[1] Nothing in the record suggests that Mr. Evans or any of his family members lived in Henry County. Nor is there any suggestion that he had any reason to be at the courthouse of the Henry County Circuit Court.

The notice appeared in the *Martinsville Bulletin* on January 5, 12, 19, and 26, 2006. The notice advised Mr. Evans to appear in court by February 24, 2006. Mr. Evans never made an appearance in response to this publication notice. On March 16, 2006, the divorce court entered a final divorce decree, which stated that the "Court doth Ratify, Confirm, Approve and Incorporate" the parties' 2005 property settlement agreement. *Id.* at 30. Consistent with the parties' agreement, the divorce court ordered Mr. Evans to pay child support in the amount of

---

[1] Code § 8.01-316(A)(3) provides: "Every affidavit for an order of publication shall state the last known post office address of the party against whom publication is asked, or if such address is unknown, the affidavit shall state that fact." The affidavit submitted by Ms. Evans alleged that Mr. Evans's "last-known address" was "not known." J.A. at 17 (altering capitalization). The affidavit did not distinguish between his last-known residential address and his last-known post office address.

2

$1,000 per month. The court noted that process had been served by order of publication and that Mr. Evans had "otherwise failed to answer the pleadings or appear in the proceedings." *Id.* at 29.

In 2019, Mr. Evans filed a "Motion to Reopen Case on Special Appearance and to Grant Relief." *Id.* at 46-47.[2] Because notice had been by order of publication, Mr. Evans argued, the divorce court had only acquired in rem jurisdiction over the proceeding. Consequently, the divorce court had never obtained personal jurisdiction over him, and thus, the in personam award of child support was void ab initio. Ms. Evans responded that the divorce court had personal jurisdiction over Mr. Evans pursuant to two subsections of the long-arm statute, Code § 8.01-328.1(A)(8) and (A)(9), because he had executed an agreement in Virginia to pay child support to a domiciliary of Virginia, had fathered children in Virginia, and had maintained a matrimonial domicile in Virginia at the time of the parties' separation.

The circuit court agreed with Mr. Evans and found that the divorce court did not have personal jurisdiction over him when it issued the final divorce decree in 2006. The portion of the final decree ordering child support was thus void ab initio. Ms. Evans appealed to the Court of Appeals, arguing in relevant part that the divorce court had personal jurisdiction under Code § 8.01-328.1(A)(8) and (A)(9) of the long-arm statute. Disagreeing with Ms. Evans, the Court of Appeals held that these provisions did not apply[3] and that the divorce court did not have in personam jurisdiction over Mr. Evans when it issued the divorce decree in 2006.

---

[2] Mr. Evans filed his motion in the Henry County Circuit Court, the same court that had issued the earlier divorce decree. For ease of reference, we refer to the court in 2019 addressing Mr. Evans's motion as the "circuit court" and the court in 2006 issuing the earlier divorce decree as the "divorce court."

[3] The Court of Appeals did not address whether other provisions of the long-arm statute could apply, *see Evans v. Evans*, Record No. 1666-19-3, 2020 WL 4112198, at *4 n.6 (Va. Ct. App. July 21, 2020) (unpublished), such as a single act of transacting business or executing a contract in Virginia, *see Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 257 Va. 315, 319

II.

On appeal to us, Ms. Evans again argues that the divorce court had personal jurisdiction over Mr. Evans when it entered the divorce decree, and thus, the court had the authority to enter an in personam award of child support. We disagree.

A.

We begin with a point of agreement between the parties. "It is elementary that one is not bound by a judgment in personam resulting from litigation . . . to which he has not been made a party by service of process." *McCulley v. Brooks & Co. Gen. Contractors, Inc.*, 295 Va. 583, 589 (2018) (quoting *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 110 (1969)). "The consistent constitutional rule has been that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant." *Id.* (quoting *Zenith Radio Corp.*, 395 U.S. at 110); *see also Vanderbilt v. Vanderbilt*, 354 U.S. 416, 418 (1957); Kent Sinclair & Leigh B. Middleditch, Jr., Virginia Civil Procedure § 7.1, at 607 (7th ed. 2020).

The parties disagree, however, about the efficacy of Ms. Evans's service by order of publication as a means of obtaining in personam jurisdiction. Before we directly address that contest, we must first survey the various statutory provisions concerning orders of publication. Code § 20-99.2(A) provides that "[i]n any suit for divorce or annulment or affirmation of a marriage, process may be served in any manner authorized under § 8.01-296 or 8.01-320."

Code § 8.01-296 provides the general rules for service of process and allows for notice by an order of publication only if a party cannot effectuate service on the defendant by personal

_____

(1999). On appeal to us, Ms. Evans does not address any other arguably applicable provisions. We likewise leave the subject untouched.

delivery (under subsection 1) or by substituted service (under subsection 2). *See* Code § 8.01-296(3) (incorporating by reference Code §§ 8.01-316 to -320).

Code § 8.01-320(A) authorizes personal service of process on a "nonresident person outside the Commonwealth." Code § 8.01-320(A) goes on to clarify that when the long-arm statute applies, personal service on an out-of-state defendant "shall have the same effect as personal service on the nonresident within Virginia." But when the long-arm statute does not apply, the out-of-state personal service "shall have the same effect, and no other, as an order of publication." Code § 8.01-320(A).

Code § 20-104 also authorizes the entry of an order of publication upon the filing of an affidavit verifying "that the defendant is not a resident of the Commonwealth of Virginia, or that diligence has been used by or on behalf of the plaintiff to ascertain in what county or city such defendant is, without effect." Code § 20-105.1 adds that "[t]he provisions of Title 8.01 for orders of publication shall be construed as alternatives to the procedures set forth in §§ 20-104 through 20-105 and not in conflict therewith."

B.

Despite the intertwined array of service-of-process statutes in the Commonwealth, two generalities have been accepted by generations of Virginia judges and lawyers.

1.

First, service of process by order of publication — traditionally called constructive service — is the "lowest quality of notice," and thus, "it will usually support only in rem jurisdiction or the in rem aspects of quasi in rem proceedings." Sinclair & Middleditch, *supra*, § 7.6[A][1], at 623; *see, e.g.*, *Cranford v. Hubbard*, 208 Va. 689, 691 (1968); *Bailey v. Bailey*, 172 Va. 18, 21-22 (1939); *Morris v. Morris*, 4 Va. App. 539, 542 (1987); *Hayes v. Hayes*, 3 Va. App. 499, 502 (1986); W. Hamilton Bryson, Virginia Civil Procedure § 3.02[3][d][iii], at 3-26

(5th ed. 2017) ("Process by publication is an inferior method of giving notice of a lawsuit.").

Professor Sinclair's "usually" qualification should not be overlooked. Not a few courts in other jurisdictions permit publication notice to effectuate in personam jurisdiction in cases in which a defendant has purposefully avoided service of process or has absconded from the jurisdiction to evade being held accountable in court. *See* 1 Robert C. Casad et al., Jurisdiction in Civil Actions § 3.01[4][a], at 289-90 & n.104 (4th ed. 2014) (collecting cases).

Although Virginia cases generally treat constructive service by publication as conferring only in rem, not in personam, jurisdiction, *see, e.g.*, *Cranford*, 208 Va. at 690-91, *Bailey*, 172 Va. at 21-22, we have never specifically addressed whether evidence of willful evasion of service would allow for an exception to that general rule. Whether such an exception does or should exist is a difficult question. Unscrupulous defendants "should not be allowed to hide from and avoid process and thus to defeat the orderly functioning of the courts." Bryson, *supra*, § 3.02[3][d][i], at 3-8. Even so, it should be rare indeed for a court to presume that such chicanery is truly happening merely because a claimant summarily states that she tried but failed to locate the defendant.

Whatever the jurisdictional implications of orders of publication, courts eschew any pretense that they are a reliable method of providing actual notice when the publication is made entirely by newspapers. This view was given full voice in the seminal case *Mullane v. Central Hanover Bank & Trust Co.*, which pointed out the inefficacy of this form of service of process:

> It would be idle to pretend that publication alone as prescribed
> here, is a reliable means of acquainting interested parties of the fact
> that their rights are before the courts. . . . Chance alone brings to
> the attention of even a local resident an advertisement in small type
> inserted in the back pages of a newspaper, and if he makes his
> home outside the area of the newspaper's normal circulation the
> odds that the information will never reach him are large indeed.

339 U.S. 306, 315 (1950); *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 797

6

(1983) ("In subsequent cases, this Court has adhered unwaveringly to the principle announced in *Mullane*."); *Schroeder v. City of New York*, 371 U.S. 208, 213 (1962) (observing that "'notice by publication is a poor and sometimes a hopeless substitute for actual service of notice,' and that 'its justification is difficult at best'" (alterations and citation omitted)).

2.

Second, courts have traditionally treated a divorce case seeking only to terminate the marriage as a type of in rem proceeding,[4] which does not require a court to obtain personal jurisdiction over the defendant. *See Williams v. North Carolina*, 317 U.S. 287, 297 (1942); *see also* 9 Dale M. Cecka et al., Virginia Practice Series: Family Law § 6:2, at 165 (2021 ed.). Under this view, "[t]he rule as to the notice necessary to give full effect to a decree of divorce is different from that which is required in suits in personam." *Atherton v. Atherton*, 181 U.S. 155, 162-63 (1901). Because of this rule, courts must distinguish between an order ending the marriage and an in personam award of spousal or child support. *See Vanderbilt*, 354 U.S. at 418; *Estin v. Estin*, 334 U.S. 541, 544-48 (1948); *Newport v. Newport*, 219 Va. 48, 54-56 (1978).

While a divorce court may issue an enforceable in rem decree terminating a marriage, a court does not have the power to issue in personam awards unless it has first obtained personal jurisdiction over the parties. *See Newport*, 219 Va. at 54-56; *Morris*, 4 Va. App. at 542-45.[5] This is a crucial distinction because "the entry of a decree against a defendant for the payment of money is essentially a decree in personam," and "this rule does not change the status of a suit for

---

[4] *See generally* Homer H. Clark, Jr. & Sanford N. Katz, The Law of Domestic Relations in the United States § 12.2, at 469 & n.135 (3d ed. 2021) (explaining why divorce decrees are usually labeled as "in rem" proceedings).

[5] *See also* Margaret F. Brinig, Virginia Domestic Relations Handbook § 21-3, at 262 (3d ed. 1996); 2 Casad et al., *supra*, § 10.02, at 408-09; Cecka et al., *supra*, § 6:2, at 165-67; Clark & Katz, *supra* note 4, § 12.4, at 493-94; 1 Brett R. Turner, Equitable Distribution of Property § 3:12, at 147 (3d ed. 2005).

7

divorce which is in its very nature a proceeding in rem." *Bailey*, 172 Va. at 21-22; *see also*

*Gramelspacher v. Gramelspacher*, 204 Va. 839, 842 (1964).

C.

In this case, Ms. Evans initiated the divorce proceeding by obtaining an order of

publication. Acknowledging the distinction between in rem and in personam judgments, Ms.

Evans argues that (1) the divorce court had personal jurisdiction over Mr. Evans under three

provisions of the long-arm statute, and (2) Code § 20-109.1 authorized the divorce court to

enforce the property settlement agreement (including its support obligation) even though

jurisdiction had been obtained by order of publication.

1.

On the first point, Ms. Evans contends that Mr. Evans executed an agreement in Virginia

to pay child support to a domiciliary of Virginia, fathered children in Virginia, and maintained a

matrimonial domicile in Virginia at the time of the parties' separation. She points to Code

§ 8.01-328.1(A)(8)(i), (8)(iii), and (9), arguing that these provisions of the long-arm statute

authorize the assertion of personal jurisdiction over her former husband under these facts. It did

not matter that he was a resident, she contends, because the subdivisions of Code § 8.01-

328.1(A) apply generally to the court's exercise of "personal jurisdiction over a person," and

Code § 8.01-328 defines a "person" to include all individuals "whether or not a citizen or

domiciliary of this Commonwealth."[6]

---

[6] *See generally* Bryson, *supra*, § 3.02, at 3-17 & n.83 ("The Long Arm Statute applies to residents and also to domiciliaries of Virginia who have absconded and cannot be found."); Sinclair & Middleditch, *supra*, § 7.7, at 627 n. 4, 641 ("It has long been assumed that the Long Arm statute can be used for service upon a Virginia defendant, if the criteria of the legislation are met."); 1981-1982 Op. Atty. Gen. 53-54 ("While the purpose of the Long Arm Statute is to provide jurisdiction over nonresidents, I am of the opinion that the Long Arm Statute extends to residents as well as nonresidents.").

8

The Court of Appeals disagreed with Ms. Evans's reasoning and held that the particular provisions she relies upon — Code § 8.01-328.1(A)(8)(i), (8)(iii), and (9) — "refer directly to 'nonresidents'" and that the service-of-process requirement under each provision specifies service on "nonresidents" only. *Evans v. Evans*, Record No. 1666-19-3, 2020 WL 4112198, at *4 (Va. Ct. App. July 21, 2020) (unpublished).[7] Because Mr. Evans was a resident of Virginia, the Court of Appeals concluded that Code § 8.01-328.1(A)(8)(i), (8)(iii), and (9) did not apply.

We need not address whether these provisions of the long-arm statute apply to residents as well as to nonresidents. Even if they do, a court could only exercise personal jurisdiction over a defendant if he has been properly served with process. *See Slaughter v. Commonwealth*, 222 Va. 787, 791 (1981) (observing that "[a] court acquires no jurisdiction over the person of a defendant until process is served in the manner provided by statute").[8] The first question we must answer, then, is whether Ms. Evans properly used service by order of publication to obtain long-arm personal jurisdiction over Mr. Evans. We conclude that she did not.

In defense of her position that publication notice was proper, Ms. Evans points to the general service-of-process section of the long-arm statute, Code § 8.01-329, which incorporates

---

[7] Code § 8.01-328.1(A)(8)(i) requires personal service "by a law-enforcement officer or other person authorized to serve process in the jurisdiction where the nonresident party is located." Subsection (A)(8)(iii) requires "proof of personal service on a nonresident pursuant to § 8.01-320," and subsection (A)(9) requires "proof of service of process pursuant to § 8.01-296 on the nonresident party by a person authorized under the provisions of § 8.01-320." *See* Code § 8.01-328.1(A)(10).

[8] There are recognized exceptions to this rule, but none apply here. *See, e.g.*, Code § 8.01-286.1 (invited waiver of service); Code § 8.01-288 (saving statute for certain cases, except divorce and annulment and other actions governed by specific statutory requirements, that deem defective service to be legally "sufficient" if process "reached the person to whom it is directed within the time prescribed by law"); Code § 8.01-327 (acceptance of service); Code §§ 8.01-431 to -432 (confession of judgments); Code § 20-99.1:1 (acceptance of service in divorce cases); *McCulley*, 295 Va. at 589-90 (observing that "a party making a general appearance prior to the entry of a final judgment waives any objection to the service of process by voluntarily submitting to the court's jurisdiction over him" (emphasis omitted)).

by reference Chapter 8 of Title 8.01, which, in turn, includes another service-of-process statute, Code § 8.01-296. As noted earlier, however, Code § 8.01-296(3) authorizes service by order of publication only when personal and substituted service are unavailable. The particular forms of substituted service addressed in Code § 8.01-296(3) include delivering the process to certain persons at the defendant's "usual place of abode" or, failing that, posting the process on the door of the defendant's "place of abode." *See* Code § 8.01-296(2)(a)-(b).

The long-arm statute also includes a form of substituted service that, if complied with, validates an assertion of personal jurisdiction. Under Code § 8.01-329(A)-(C), a claimant may serve the Secretary of the Commonwealth as the defendant's "statutory agent" who must then send the process to the defendant by certified mail (with return receipt requested) at the defendant's "last known address." The serving party must submit an affidavit disclosing the defendant's last-known address. In addition, if the defendant is a resident, the affiant's signature certifies

> that process has been delivered to the sheriff or to a disinterested person as permitted by § 8.01-293 for execution and, if the sheriff or disinterested person was unable to execute such service, that the person seeking service has made a bona fide attempt to determine the actual place of abode or location of the person to be served.

Code § 8.01-329(B). No provision of the long-arm statute expressly states or necessarily implies that constructive service by order of publication may be used in preference to the long-arm statute's own substituted-service provision.

Reading these various service-of-process statutes as a harmonious whole, the legislative intent is unmistakable. Service of process under Virginia statutes involves a cascading series of efforts designed to provide due process by ensuring that the method of notice be "reasonably calculated to reach the intended recipient" and "be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Jones v. Flowers*, 547 U.S. 220, 228-29

(2006) (citation omitted).  Consistent with our common-law traditions, statutory hierarchies of methods of service — *primus* personal, *deinde* substituted, *deinde* constructive — are best understood not as "alternatives but successive methods," Bryson, *supra*, § 3.02[3][d][ii][B], at 3-1 to 3-2, ranging from most effective notice to least effective.

In practical terms, this sequencing means the more likely methods of achieving due process (personal service and substituted service) must be reasonably attempted before the least likely method (constructive notice) can be used, if at all, as a last resort.  Because statutes authorizing constructive service are in derogation of the common law, "the order of publication and the statute authorizing it both must be strictly construed," *Forrer v. Brown*, 221 Va. 1098, 1105 (1981); *see also Robertson v. Stone*, 199 Va. 41, 43 (1957); *Dillard v. Krise*, 86 Va. 410, 412 (1889).  As an "inferior method" of providing notice, service by order of publication may not be employed without a convincing showing that there was no realistic "ability to get the better service," *Washburn v. Angle Hardware Co.*, 144 Va. 508, 513-14 (1926) (citation omitted).

Service by order of publication, after all, was historically thought of not as a lower form of process but rather as an effort "in lieu of process," *Forrer*, 221 Va. at 1105, and one that "takes the place of process," *Peatross v. Gray*, 181 Va. 847, 858 (1943).  Though our vocabulary on this subject has changed over time, our skeptical view of it has not.  To be sure, it will likely grow given the precipitous decline in print newspaper readership, the increasing mobility of the population, and the Internet's ever-expanding ability to locate and communicate with individuals.  How these developments will change things in the future we do not know.[9]  But for

---

[9] *See generally* Jennifer Lee Case, *Extra! Read All About It: Why Notice by Newspaper Publication Fails to Meet Mullane's Desire-to-Inform Standard and How Modern Technology Provides a Viable Alternative*, 45 Ga. L. Rev. 1095, 1096 (2011); Daniel S. Cohen & Brian D.

11

now, the historic judicial skepticism of service by order of publication will tolerate its presumed utility only in situations in which all other alternatives have been diligently exhausted.

That is not the case here. Ms. Evans did not attempt to use the substituted-service provisions of the long-arm statute by serving the Secretary of the Commonwealth. She did not provide Mr. Evans's last-known address (which presumably was the former marital home in Virginia Beach), nor did she certify by affidavit that personal service had been attempted but was unsuccessful. Instead, Ms. Evans's first and only attempt at service was constructive service by order of publication. The circumstances surrounding this effort, however, provide us with little confidence of its efficacy. These facts stand out among others:

- Ms. Evans's complaint identified Mr. Evans's "last known place of abode" to be in Virginia Beach, presumably the marital residence at the time of separation. *See* J.A. at 2. Her affidavit seeking an order of publication, however, stated that his last-known address was "[n]ot known." *Id.* at 17.

- After her separation and prior to filing for divorce, Ms. Evans moved to Henry County. The publication order that she obtained from the clerk of court notified readers of the *Martinsville Bulletin* of the pending suit. Ms. Evans, however, did not allege that Mr. Evans or any of his family members lived in Henry County or that they would have read a local paper published there.

- Ms. Evans stated that she had contact with Mr. Evans up until November 2005, approximately a month before she filed her complaint. She did not reveal whether her recent contact with

---

Koosed, *Extra!! Extra!! Click All About It? Modernizing Public Notice Laws in a Digital Age*, 26 Va. J. Soc. Pol'y & L. 1, 4 (2019); Lauren A. Rieders, *Old Principles, New Technology, and the Future of Notice in Newspapers*, 38 Hofstra L. Rev. 1009, 1023 (2010). In Virginia, the process of rethinking publication notice has begun to take shape in recent legislative changes. *See* 2020 Acts ch. 159, at 231 (amending Code § 8.01-317 to allow the court to order "that appropriate notice be given by electronic means . . . either in addition to or in lieu of publication in a newspaper"); 2019 Acts ch. 635, at 1092-93 (amending Code § 8.01-324 and adding that when a notice "is required to be published in a newspaper of general circulation, the newspaper shall (i) post the complete notice on the newspaper's website . . . ; (ii) include on its website homepage a link to its public notice section; and (iii) post the complete notice on a searchable, statewide repository website").

him was in person or by phone, email, social media, or otherwise. And the only specific evidence offered to the divorce court of her due diligence was that she had called his family members and had apparently learned nothing from them.

- Ms. Evans's affidavit and deposition testimony did not allege that Mr. Evans was willfully evading service or that he had absconded with the intent to avoid answering her complaint. She claims on brief that this is a reasonable inference, but the sparse explanation of her due diligence renders that inference questionable.

In short, Ms. Evans's service by order of publication in a local Henry County newspaper appeared to have had no realistic possibility of ever reaching Mr. Evans, and she has not demonstrated why the most inferior method of service was the best that she could do.[10]

That said, we need not adjudicate the constitutionality of Ms. Evans's use of service by order of publication in support of her in personam claim for child support. Nor do we answer the question whether Code § 8.01-328.1(A)(8)(i), (8)(iii), and (9) apply to residents in addition to nonresidents. Instead, we need only address Ms. Evans's argument that the long-arm statute authorized an in personam award against Mr. Evans, a resident defendant, in a divorce case initiated by service through order of publication. This argument fails at its inception. Her ineffectual method of constructive service by order of publication, as outlined above, reveals a lack of due diligence rendering the entire exercise inferior to the substituted-service option available under the long-arm statute. For this reason, which we see as the best and narrowest

---

[10] Service-of-process affidavits asserting that "diligence" has been exercised "must, in fact, be true, and not merely idle declarations having no factual basis." *Dennis v. Jones*, 240 Va. 12, 18 (1990). "The noun 'diligence' means 'devoted and painstaking application to accomplish an undertaking,'" and making "[m]ere 'informal contacts' with unnamed friends," without more, is not enough. *Id.* (citation omitted). The circuit court found it unnecessary to consider whether Ms. Evans's allegation of diligence was factually supportable. Ms. Evans does not argue on appeal that we should remand this case for further evidence on this issue. *See, e.g.*, *Tulsa Pro. Collection Servs., Inc. v. Pope*, 485 U.S. 478, 491 (1988); *Mennonite Bd. of Missions*, 462 U.S. at 798 n.4. Given our holding, we offer no opinion on this subject.

ground for resolving this case, we reject Ms. Evans's argument that the divorce court had obtained personal jurisdiction over Mr. Evans pursuant to the long-arm statute.

### 2.

On the second point, Ms. Evans argues that Code § 20-109.1 "specifically authorizes courts to incorporate valid agreements into a final divorce decree, including monetary provisions regarding child or spousal support, and enforce them in the same manner as any other provision, even when jurisdiction is obtained by order of publication." Reply Br. at 11; *see also* Appellant's Br. at 30-31. It is an intriguing argument, one that the Court of Appeals has previously addressed, *see, e.g.*, *Morris*, 4 Va. App. at 542-45, but it is not one that Ms. Evans raised either in the circuit court or in her appeal to the Court of Appeals, *see* J.A. at 78-81; CAV R. at 54-69.

Under settled principles, "[w]e will not consider an issue raised [by an appellant] for the first time on appeal." *Nusbaum v. Berlin*, 273 Va. 385, 407-08 (2007). To the extent Ms. Evans sees the argument about Code § 20-109.1 as a mere bolstering point ancillary to the main assertion that she has made from the start, we respectfully disagree. We see the Code § 20-109.1 argument as a thoughtful but nonetheless "different twist on a question that is at odds with the question presented to the [lower] court[s]," *Bethea v. Commonwealth*, 297 Va. 730, 744 (2019) (citation omitted). It is a wholly independent argument that, if correct, would be dispositive. Consequently, we do not answer the question whether Code § 20-109.1 empowers a court to make a support award consistent with a property settlement agreement in a divorce case initiated solely by constructive service through order of publication.

### D.

Before concluding, we must further clarify the precise issue that we are addressing in this opinion. Our holding focuses on the enforceability of the in personam award of child support

ordered in the final divorce decree entered in this case. We offer no opinion on the stand-alone enforceability of the property settlement agreement in which Mr. Evans promised to pay child support.[11] Nothing in our reasoning implies that declaring void a judicial decree attempting, albeit ineffectually, to incorporate and enforce a contract necessarily renders the incorporated contract void. That question is not before us in this case.

III.

In sum, the divorce court did not obtain personal jurisdiction over Mr. Evans pursuant to Ms. Evans's requested service by order of publication, and thus, the provisions of the divorce decree awarding child support are void ab initio. For these reasons, we affirm the judgment of the Court of Appeals.[12]

*Affirmed.*

---

[11] The divorce decree in this case stated that "the Court doth Ratify, Confirm, Approve and Incorporate into this Decree by reference thereto the Property Settlement Agreement dated June 23, 2005." J.A. at 30. *See generally Hering v. Hering*, 33 Va. App. 368, 372-74 (2000); *Owney v. Owney*, 8 Va. App. 255, 259 (1989); *Parra v. Parra*, 1 Va. App. 118, 129 (1985), *superseded by statute on other grounds*, Code § 20-107.3, *as recognized in Erickson-Dickson v. Erickson-Dickson*, 12 Va. App. 381, 385-86 (1991); Cecka et al., *supra*, § 9:15, at 363.

[12] Though Mr. Evans prevails on appeal, he has no just basis for seeking an award of attorney fees. We deny his request for the same.